## STATE VS. SCHINGEN.

*Larceny—Conversion of master's property by servant—Proof of conversion—Drunkenness as a defense.*

1. A conversion by a servant to his own use of property of the master put in his charge, is larceny.

2. To make such a conversion larceny, the felonious intention need not have existed in the servant's mind at the time of receiving the property into his charge.

3. An *offer* by the servant to sell such property is sufficient proof of the conversion, without any actual sale.

4. There being evidence tending to show that defendant was intoxicated when he offered to sell the property, it was not error to refuse to instruct the jury, "that if he was sober when the property was delivered to him, and had then no intention to convert it, but afterwards became so intoxicated that he did not know the consequences of his own acts, and while in this condition offered to dispose of it, then they should find him not guilty;" and thereupon to instruct them that "if the defendant was so drunk as to be unable to form any intention at the time he offered to dispose of the property, he must be acquitted, unless they were satisfied that he had formed the intention to steal while in the possession of his reasoning powers."

ON EXCEPTIONS from the Circuit Court for *Winnebago* County.

The defendant was indicted for larceny of two horses and a set of harness, the property of one Buhler; and the jury having found him guilty, a new trial was refused. The principal questions presented by the defendant's exceptions, arose upon instructions asked for by him and refused; the character of which will sufficiently appear from the opinion, *infra*.

*Whittemore & Weisbrod*, for defendant, cited 2 Russ. on

Crimes, 5 id., 163, 51–53, 54, 56, 57 ; 1 id., 8 ; 2 Wharton's
Am. Cr. Law, secs. 1802, 1790 ; 1 id., sec. 41 (with note "p"),
42–44 ; Roscoe's Crim. Ev., 534–37, 540–543, 553–4 ; 2 Greenl.
Crim. Ev. §162. They contended that the first charge given
by the court (as recited in the opinion) did not require the jury
to find that the defendant, at the time of the alleged conversion,
had the property *in his charge as a servant*, before they could
find him guilty of larceny in such conversion.

*Winfield Smith*, Attorney General, for the state, to the point
that a servant commits larceny by converting to his own use
property of his master with which he is entrusted, cited *People
v. Call*, 1 Denio, 123 ; *State v. Self*, 1 Bay, 242 ; *U. S. v. Clew*,
4 Wash. C. C., 700 ; *Walker v. Com.*,8 Leigh, 743 ; 2 Russ. on
Crimes, 153, 157, 21, 22 ; *R. v. Robinson*, 2 East P. C., 565 ;
*R. v. Bass*, id., 566 ; *R. v. McNamee*, 1 Moody, C. C., 368 ;
*Richards v. Com.*, 13 Gratt., 803 ; *Farrell v. People*, 16 Ill., 506 ;
Wharton's Am. Cr. Law, §§ 1840–43 ; Barb. Cr. Law, 157–161 ;
Roscoe's Cr. Ev., 600. 2. It is unnecessary to prove a feloni-
ous intent when the defendant left with the property for Omro.
*People v. Call*, 1 Denio, 124 ; 2 Russ. on Cr., 157–8. 3. Proof
of the offense as to *one* of the pieces of property mentioned in
the indictment is sufficient. *People v. Wiley*, 3 Hill, 213 ;
Wharton's Am. Cr. Law, §§ 336, 1751. 4. As to drunkenness
affecting the question of intention, see Roscoe's Cr. Ev., 954 ;
3 Greenl. Ev., §§ 6, 198 ; Wharton, §§ 31–44.

COLE, J. The first instruction asked for on the trial by the
defendant, however true as an abstract proposition of law, yet,
without some explanation, was calculated to mislead the jury.
The evidence shows most clearly that the defendant was in the
employ of Buhler, and had been sent from Berlin with the team
to take some beer to Omro and Waukau, with instructions to
bring back the kegs and money, returning by the way of Eu-
reka the same day. It appears that, after disposing of most
of the beer at Omro, the defendant threw the empty kegs and

two full ones remaining unsold over the fence into a field at that place, and instead of returning to Berlin, drove off with the wagon and horses to Oshkosh, where he offered the horses for sale, and did actually sell the harness. By the instruction above referred to, the court was asked to charge the jury that without the commission of a trespass there could be no larceny, and that there could be no trespass unless the goods were taken by the accused while in the possession of the owner. The court gave this instruction with the additional remark, that if the accused was at work for the owner of the property, and the property was put into the prisoner's hands to go to Omro and other places, it remained in the owner's possession; and if the prisoner took it beyond the places he was to go to, for the purpose of converting it to his own use, this was a trespass. Now we think the explanatory remarks were very proper, in view of the facts of the case. For the evidence was most distinct and positive upon the point, that the defendant was in the employ of Buhler, and had been sent away by him with the wagon, horses, harness, beer &c., for the purpose just stated. He was therefore the servant of Buhler, having only a bare charge or custody of the property, while the legal possession was in the owner. The relation of master and servant thus existing between the parties when the property was entrusted to the care of the defendant for a special purpose, in contemplation of law the possession was in the master, and the defendant might be guilty of a trespass and larceny in fraudulently converting it to his own use. This principle is fully established by the authorities to which the attorney general referred on the argument. Hence it was very proper for the court to accompany the instruction with the remarks he made upon it, and tell the jury that if the defendant was at work for the owner of the property, and the property was put under his custody to go to Omro and other places, his possession was for the time being the possession of the master, and if the defendant took it beyond the places he was to go to, with the intent to convert

it to his own use, he was guilty of trespass. Otherwise the jury might have possibly supposed, because the defendant had the property under his care and custody, he must likewise necessarily have the possession, and could not therefore be said to take it from the possession of the owner.

The court was further asked to charge the jury, that if they should find from the evidence that the defendant had the property for the purpose of going to Omro and other places to carry the beer, and that at the time he took the property from the owner he really intended to use it for that purpose, and had no intention, at the time he took possession of it, to steal, but, finding himself in the possession, he afterwards formed the intention of converting it to his own use instead of using it for the purpose originally designed, then the taking would not amount to a felony, nor would it constitute larceny. This instruction is obviously incorrect, since it assumes that to constitute larceny the felonious intent must have existed when the defendant was first intrusted with the custody of the property. It was not necessary that the jury should find that the *animus furandi* existed at the time the defendant left Berlin for Omro. It was enough that the intention existed while he had charge of the property as servant to the owner, and that it was carried into effect by converting the property to his own use. *The People v. Call*, 1 Denio, 120 ; 2 Russell on Crimes, 157–8.

The court was further requested to charge the jury that there must be an actual conversion of the property to constitute larceny ; that conceding that the defendant procured the possession of the property·for the purpose of stealing it, and that he offered to sell it or a portion of it, but did not perfect the bargain and no sale was made, in that case the offense of larceny would not be complete. The difficulty with this instruction is, that it assumes that there could be no conversion of the property unless the defendant had actually sold it. As a matter of fact he did sell the harness. He likewise offered to sell the

horses, but failed to find a purchaser. But it is manifest that if the defendant took charge of the property originally with the felonious intent of converting it to his own use, and of making it his own without the consent of the owner, and did thus appropriate it, he was guilty of larceny, although he had not sold it. Otherwise it would follow that if he retained possession of and used the horses until they died, and the wagon and harness until they were worn out, still he could not be convicted of larceny, because he had not sold and parted with the possession. Or if, having received the property with the same felonious intent, he had taken it off out of the state and country, yet because he kept it the offense would not be complete. Undoubtedly the defendant, by receiving the property with the felonious intent of stealing it, might fraudulently convert it to his own use without actually selling it. Our statute makes it larceny for a servant, having property under his care by virtue of his employment, to take and secrete it with intent to embezzle and convert it to his own use without the consent of the owner and employer. Sec. 27, chap. 165, R. S.

There was some evidence which tended to show that the defendant was intoxicated at Oshkosh, where he offered the property for sale. And the court was asked to charge the jury, if they found that he was sober at the time the property was delivered to him, and that he then had no intention to convert it to his own use, but afterwards became so intoxicated that he did not know the consequences of his acts, and while in this condition disposed of, or offered to dispose of, the property, that then they should find him not guilty. The court refused to give this instruction, but charged the jury that the intention of the defendant in the commission of the act was the gist of the crime of larceny, and that a person who, from drunkenness or other cause, may have lost his understanding, cannot in contemplation of law be accountable for his intention; that although drunkenness was no excuse for the commission of many crimes, yet it was of great importance as affecting the question of in-

tention, and therefore, if they should find that the defendant was so drunk as to be unable to form any intention at the time he offered to dispose of the property, he should be acquitted, unless they were satisfied of the further fact that he had formed the intention to steal while in the possession of his reasoning powers.

We are satisfied that the circuit court charged the jury upon the point of drunkenness quite as favorably to the defendant as the law would allow. The jury were told that if the defendant, at the time he offered the property for sale, was so drunk as to be unable to form any intention, that is that he was so drunk as not to know what he was doing, then he should be acquitted, unless the evidence showed that the felonious intent existed when he was in the full and undisturbed possession of his mental faculties. We certainly think there was nothing in all this of which the defendant can complain.

*By the Court.*—The exceptions in this case are overruled, and the judgment of the circuit court affirmed.