## THE STATE OF MINNESOTA

### vs.

## JOHN GUT.

A challenge to the panel of the grand jury is allowed only for one or more of the causes mentioned in the statute; and this rule holds when the grand jury is summoned on a special venire.

Counties attached for judicial purposes constitute a single trial district, and a person charged with the commission of crime in any one of such counties, may legally be tried in any other. A law changing the place of trial from one to the other, is not as to crimes committed before its passage, repugnant to *Sec. 6, Art. 1 of the State Constitution*, which secures to the accused a trial by a jury of "the county or district where the crime is committed."

*Chapter* 112 *of the General Laws of* 1867, is not in conflict with *Sec. 27, Art. 4 of the Constitution*, which provides that "no law shall embrace more

than one subject, which shall be expressed in its title." *Tuttle vs. Stout*, 7 *Minn.*, 465, followed.    This clause of the Constitution is to be liberally construed.

It is for the judge presiding at the trial to decide, whether a state of mind exists on the part of individual grand jurors, disqualifying them to act impartially, and his decision will not be reversed, where the evidence returned to this Court does not show it erroneous.

When a challenge is interposed by the State, and afterwards withdrawn, its interposition—whether authorized or not—can not be alleged as error.

Where a defendant on whom untrue and defective copies of the indictment were served, on being arraigned makes a motion to set aside the indictment, it is a matter in the discretion of the Court to order the arraignment set aside, and a new arraignment before entertaining the motion to set aside the indictment.

It is not a ground for setting aside the indictment, that there was another indictment pending in the Court, against the same person for the same offense, at the time the indictment on which he is arraigned (and which he moves to set aside) was found.

While Redwood county was attached to Brown for judicial purposes, a crime was committed in the latter, for which the defendant was indicted in the former, and thereupon on his motion the venue was changed to Nicollet, which adjoins Brown, but not Redwood.   *Held :* The last two named counties being a single trial district, that the change was within the spirit of the law, which allows a change to a county adjoining that in which the crime was committed.   Whether after the change had been allowed on the prayer of the defendant, he could be heard to question its legality, *quaere.*

Upon a challenge to the panel of the petit jury, it appearing that the list was drawn by the commissioners at a regular meeting of the board in January, 1867, *Held,* That it will be presumed that it was drawn at the annual meeting in January, as required by law—the presumption being in favor of the legality of the proceedings.   On such challenge, the Court will take judicial notice that the county auditor is *ex officio* clerk of the board of county commissioners.

The failure to file *forthwith* in the office of the clerk of the District Court the list of persons drawn to serve as petit jurors, is an immaterial error, and therefore not ground for challenging the panel.

On a challenge to the panel on the ground that the jury was not regularly drawn, the officers whose irregularity is complained of are competent witnesses to prove or disprove the facts alleged as ground of challenge, even though their testimony may contradict their official certificate.

The State of Minnesota v. Gut.

A mere verbal error in the return of the sheriff on the venire is immaterial.

The return of the venire by the sheriff to the clerk *the day before* the session of the Court (the statute requiring it to be returned to the Court "at the opening thereof") is an immaterial error.

What certain persons who took the defendant to a hospital for medical treatment in 1866, said as to his mental condition at that time, is not competent evidence, being merely hearsay.

The depositions of witnesses on the part of the defendant, are not receivable in a criminal prosecution, unless a foundation is first laid by showing that the witnesses are absent from the State, or beyond the jurisdiction of the Court, or that due diligence has been used to secure their presence.

It is legal to kill an alien enemy in the heat and exercise of war, but to kill such enemy after he has laid down his arms, and is confined in prison, is murder, and the rule is the same where such enemy belongs to one of the Indian tribes.

A State officer can not make legal the killing of an Indian, by offering a reward for such killing.

The fact that the deceased had killed the friend of the defendant, is not a legal provocation, such as would reduce the grade of the crime from murder to manslaughter. Whether this would be so if the defendant had been present when his friend was killed, and taken the life of the slayer in the excitement of the moment, *quaere.*

The Court charged: "If the defendant has an insane delusion upon any one subject, but commits crime upon some other matter not connected with that particular delusion, he is equally guilty as if he had no delusion, and was perfectly sane." *Held,* not to be error. *State vs. Shippy,* 10 *Minn.,* 223, followed.

The Court charged: "That whether the defendant at the time of inflicting the blows upon the deceased, knew that the natural and necessary consequences of his acts were to produce the death of the deceased, might be taken into consideration by them in determining whether he knew or understood the nature and consequences of his acts." *Held,* not to be error.

The charge of the Court on an abstract proposition which could not prejudice the defendant, is not a ground for a reversal, whether the law is correctly laid down or not.

It is with great hesitancy that the Courts say, in a criminal case, that any error does not prejudice the defendant, and where there is any doubt as to its effect, he is entitled to the benefit of the doubt.

It appearing that the defendant killed the deceased *intentionally,* as a matter of revenge, the crime is of the same grade, whether he was intoxicated or not.

It was not error in the Court to charge that "Insanity was a defense, and must be made out, from the evidence, to the satisfaction of the Court, as any other defense."

Said law of 1867 is not an *ex post facto* law.

The time of the execution is not an essential part of the judgment or sentence. It is for the judge before whom the conviction is had, to designate the time—not less than one nor more than six months—for which the convict shall be kept in solitary confinement; and at the expiration of that time, it is the duty of the Governor to issue his warrant of execution. If for any reason his warrant is not issued immediately on the expiration of that time, he may afterward issue it, and cause the legal execution of the convict.

The defendant in this case was indicted, tried and convicted of the crime of murder, and the sentence of the Court was pronounced. He brings the cause to this Court by appeal.

ATWATER & FLANDRAU for Appellant.

F. R. E. CORNELL, Attorney General, for Respondent.

*By the Court*—WILSON, Ch. J.—The defendant was indicted for the murder of Charles Campbell, and having been tried, was found guilty, on the 31st day of January, and sentenced on the 1st day of February following. Campbell was killed in Brown county on the 25th day of December, 1866, and the indictment was found on the 11th day of September, 1867. The following named counties are, and were at the time of the homicide, attached to Brown for judicial purposes, viz: Cottonwood, Murray, Pipestone and Redwood. The legislature by an act approved March 9th, 1867, (*Laws of 1867, p.* 156), provided:

"*Section* 1. In all cases where one or more counties are attached to another for judicial purposes, the title of the District Court for such counties shall hereafter be: The State of Minnesota, District Court, for such judicial districts,

counties of—⸺ and⸺, (naming all the counties for
which a common place for holding terms of the District Court
are by law provided), and the clerk of the District Court,
sheriff and county attorney of the county in which such Court
is held, shall perform the duties in said Court that would
have devolved upon them respectively had it been a Court
held exclusively for such county."

"*Sec.* 2.   On the first Monday of April, A. D. eighteen
hundred and sixty-seven, and in January of each year there-
after, the board of county commissioners of each of the sev-
eral counties of this State, which are now by law attached to
another county for judicial purposes, shall meet and select
persons properly qualified for grand jurors and petit jurors,
and the number of such persons so selected in each county,
and all proceedings in the selection of the same, and in the
making, signing, attesting and delivering of the lists thereof,
and in the drawing and summoning of grand and petit jurors
for each term of the District Court for such counties, shall
conform to the regulations now provided by law, except that
the lists of persons suitable for grand and petit jurors se-
lected in each county shall be delivered to the clerk of the
District Court of the county in which such Court is held, and
that the grand jurors shall be drawn by the said clerk from
all the names returned by the several counties collectively as
those of persons suitable for grand jurors, and that the petit
jurors shall in like manner be drawn from the names of those
in like manner returned as those of persons suitable for petit
jurors, and except also that the sheriff of the county in
which such Court is held, or his deputy, shall officiate in the
summoning of the jurors so drawn, in the same manner that
he would be required to do provided said Court was held
exclusively for his own county :   *Provided,* That in case any
counties included within the provisions of section one of this

act have no board of county commissioners, the board of county commissioners of the county in which such Court is held shall select suitable persons from such counties for grand and petit jurors, and the same shall be selected and lists of them made, signed, attested and delivered as provided above."

By *Section* 3, it is provided, that no action or prosecution pending in any Court, the title of which is thus changed, shall be affected by the change, and that "such· Court shall also have the same·civil and criminal jurisdiction over all the counties for which it is held that it would have had provided its title had not been changed."

*Section* 4 reads :—"The judge of any District Court, the title of which is changed by the provisions of *Section* 1 of this act, may, whenever he shall consider it to be in furtherance of justice or for the public convenience, order that the place for holding such Court may be changed from the county now designated by law as the one in which such Court shall be holden, to one of the other counties embraced in the title of such Court."

*Section* 8 reads :—" In case any of the counties included in the provisions of this act shall have no board of county commissioners, then the board of county commissioners and all the county officers of the county in which such Court is holden, shall act as the board of commissioners and county officers of such county in the same manner, and returns from said counties shall be made to and through such officers in the same manner as is now required to be done in fully organized counties; *Provided*, That such board of commissioners shall not have power to levy any greater tax upon said counties than is sufficient to provide for the expenses thereof, including the laying out, opening and improving of roads and buildings, and repairing of bridges therein."

On the 25th day of May, 1867, in pursuance of said law,

the Judge of the 6th Judicial District, of which Brown county is a part, made an order in the following words:

" State of Minnesota, District Court, 6th Judicial District. Counties of Brown, Cottonwood, Murray, Pipestone, and Redwood:

It appearing to my satisfaction that the furtherance of justice requires that the place of holding the General Term of the District Court in and for the counties above mentioned, should be changed from the county of Brown to one of the other counties above mentioned; *Now therefore*, be it, and it is hereby ordered that the place for holding the said Court for the counties first above named, be and the same is hereby changed fron the town of New Ulm and county of Brown, to the town and village of Redwood Falls in the county of Redwood," &c. Accordingly the Court met in Redwood county, where the defendant was indicted for murder in the first degree. He objected to the change and to every step taken thereabout. Afterward a change of venue to Nicollet county was ordered on his motion, where he was tried, convicted and sentenced. He thereupon removed the cause to this Court by appeal from the judgment.

We will now consider the alleged errors in the proceedings below. The grand jury in attendance having been illegally summoned, the defendant challenged the panel. The challenge was allowed and the jury discharged. The Court thereupon ordered twenty-three grand jurors to be summoned on a special venire, and to the panel thus summoned the defendant interposed a challenge, which was disallowed.

It is not necessary to consider separately the grounds of this challenge, for a challenge to the panel of the grand jury can be allowed only for one or more of the causes mentioned in the statute; this challenge not being for any such cause was therefore properly disallowed. *Gen. Stat., p.* 637, *sec.*

14. The words of the statute are: "A challenge to the panel may be interposed for one or more of the following causes only." Neither this, nor any other provision of our statute, gives any support, we think, to the proposition that a challenge for other causes may be interposed to a jury summoned on a special venire. Whether this should be so it is not for us to say. There were, at different stages of the proceedings in the court below, to the laws of 1867 above quoted, two objections urged, which may properly be considered at this point of our discussion, for if well taken they are radical and fatal.

The first is that the law is in conflict with *Section 6, Article one of the State Constitution,* which reads as follows: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the county or district wherein the crime shall have been committed, which county or district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel in his defense."

We are unable here to discover any conflict. The law does not change the district, but merely the place of trial in the district—which is not forbidden. Before its passage, jurors, for the trial of crimes committed in Brown county, were chosen from that county, and the counties attached thereto for judicial purposes; (*Comp. Stat., p.* 143, *sec.* 29; *Ib., p.* 154, *sec.* 7; *Gen. Stat., p.* 117, *sec.* 98), the same district from which they are now chosen. The defendant, therefore, under this law, had a jury of the district in which the crime was committed, which district was previously ascertained by law.

The second objection to the law is that it is in conflict

with *sec. 27, art. 4, of the Constitution*, which reads: "No law shall embrace more than one subject, which shall be expressed in its title." . The title of the law is in these words: " An act to change the titles of and regulate the holding of Courts for counties unorganized for judicial purposes, and to regulate the manner in which the counties to which they are attached for such purposes are to provide for the transaction of the business of counties which have no board of county commissioners." The defendant states his objection to the law on this ground as follows: " In the body of the act the first seven sections are devoted to regulating the holding of the Courts, &c. In the eighth section the whole subject of county business is provided for, with a limitation upon the powers of county commissioners," &c. The objection, we think, can not be allowed. Under *sec.* 8 jurors are drawn and returned from counties having no commissioners. That part of the law providing for such drawing and return, is germane to the other portions thereof, which provide for the holding of the Courts on which such jurors are to attend, and although greater power is perhaps conferred on the county officers than is necessary to enable them to draw or return jurors, we do not think the law is therefore void. This constitutional restriction must be liberally construed. A strict adherence to its letter would seriously interfere with the practical business of legislation, and would frequently nullify laws not repugnant to its spirit or meaning. In *Tuttle vs. Strout*, 7 *Minn.*; 465, this Court said: "As to the defendant's objection that the act is void as embracing more than one subject, we may remark that since the decision of this Court in the *Board of Supervisors of Ramsey County vs. Heenan*, 2 *Minn.*, 330, the question can hardly be considered as still open. We there held in substance, upon a similar objection, * * that although this provision of the

vol. xiii.—24

Constitution was not merely directory, yet where several provisions of an act of the legislature related to one general subject, and there was no evidence of an attempt fraudulently to insert matter foreign to the subject expressed in the title, there was no violation of the spirit of the Constitutional provision, although it may not have been followed to the letter. * * We think the law under present consideration, is as little liable to the objection as that passed upon in the case above referred to. There is no pretense of fraud in its passage. There is but one subject, that of exemption from sale on execution, legislated upon by this act. And although the title, it being 'An act for a homestead exemption,' while the act treats also of exemptions of personal property, does not necessarily cover the entire subject; it is sufficiently suggestive thereof to satisfy the requirement of the Constitution." See also *Louisville vs. Ballard, &c.*, 2 *Met.*, (*Ky.*) 169; *Parkinson vs. The State*, 14 *Maryland, R.* 193; *Pierpont vs. Crouch*, 10 *Cal.*, 315. It must be admitted that the subject of this law is not clearly or accurately expressed in its title, but unless we reverse *Tuttle vs. Strout* above cited, we must hold the law valid, for the title is certainly "sufficiently suggestive" of the subject; "there is no pretense of fraud," and the several portions of the act relate to one general subject—the holding of Courts in trial districts composed in part of counties not organized for judicial purposes. This is the only subject that seems to have been in the mind of the legislature in the framing of this law, and if it is to be held void because some of its provisions incidently relate to or embrace other subjects, then few laws containing numerous sections can be upheld. The return of jurors from such unorganized counties, makes necessary the levy of taxes to defray the incident expenses, and therefore it was proper to provide for such levy. We think the law is not in conflict

with the spirit of the Constitutional provision, and that it is supported by the authority above referred to.

We discover no error in the ruling of the Court disallowing the challenge to the individual grand jurors Warden, Root and Laraby. It was for the Court below to decide whether a state of mind existed on their parts disqualifying them to act impartially, and after a consideration of the evidence offered on the trial of the challenge, we are unable to say that the decision is erroneous. It was argued by the defendant's counsel that Root was disqualified, on account of his having acted as bailiff of a former grand jury that had this charge under consideration. But the "case" does not show what subject was before that grand jury. Whether the State had a right to challenge a grand juror, it is not necessary to determine, as the challenge interposed was withdrawn, and therefore can not have prejudiced the defendant. On the 17th of September, 1867, the grand jury presented to the Court an indictment against the defendant and others, charging them with the crime of murder in the first degree. On the 18th day of September the grand jury presented a second indictment against the same persons, charging them with the same crime. On the last named day, the persons charged were arraigned on the first indictment, to which they did not then plead, but on the next day, and before pleading, they made a motion to set it aside. The Court refused to entertain the motion at that time, as it appeared the defendants had been served with defective and untrue copies of the indictment, and it ordered that the arraignment should be set aside, and a new arraignment had before the motion should be entertained. To the ruling and order the defendants excepted. That indictment was then, on motion of the Attorney General, without objection by the defendants, set aside; and they were arraigned on the second indictment.

There was no error in the action of the Court excepted to.
No rule of law or right of the defendant was violated. It
was in the discretion of the Court to entertain the motion
when made, or to refuse to hear it until the arraignment was
properly made, and we think the discretion was rightly exer-
cised. The defendants moved the Court to set aside the in-
dictment on which they were arraigned, for the following,
among other grounds:—" That there was another indictment
pending in this Court, against the same parties, for the same
offense, at the time when this indictment was found." The
Court denied the motion and defendant excepted. The *Chapter
of the Gen. Statutes* (110) relied on by the defendant does not
recognize this as a ground for setting aside the indictment.
The next error urged is the change of venue from Redwood
to Nicollet county. The change was ordered on the motion
of the defendant. Our law authorizes the Court when it ap-
pears that a fair and impartial trial can not be had in the
county where the offense was committed, to direct the person
accused to be tried in some adjoining county. Nicollet, to
which the venue was changed, adjoins Brown, in which the
offense was committed, but does not adjoin Redwood, where
the prosecution was pending before the change. But Brown
and Redwood (with other counties), being a single trial dis-
trict, the change to Nicollet—which adjoins the district—was
allowed by the spirit and meaning of the law, if not by its
letter. It is not necessary, therefore, to consider whether the
defendant could question the legality of the change, after
having prayed for and obtained it. We certainly cannot
assent to the view that " a defendant cannot waive anything
in a criminal trial."

The defendant challenged the panel of the petit jury, spec-
ifying five different grounds of challenge:

*First.* That the list of jurors from which the panel was

drawn, does not appear to have been made at the annual meeting of the commissioners in January, 1867; that the list is not attested by the clerk of the board, and was not forthwith delivered to the clerk of the Court.

On the trial of the challenge, the defendant offered in evidence the list of petit jurors for 1867, which is as follows: "List of persons selected for petit jurors by the county commissioners in January, 1867," and after the list of names is the following certificate signed by the chairman and attested by the county auditor: "I certify that the above named persons were duly selected for petit jurors for the year 1867, by the board of county commissioners of Nicollet county, at a regular meeting of said board held in January, 1867."

This is a sufficient showing that the list was drawn at the annual meeting in January, 1867, for the presumption is in favor of the legality of the proceedings. The attestation by the county auditor was sufficient, for we will take judicial notice of the fact that the auditor is *ex officio* clerk of the board. The statute requiring the list to be "forthwith delivered to the clerk of the District Court," does not appear to have been complied with.

The list appears to have been filed by the clerk September 20, 1867. Is this failure to comply with the statute a ground of challenge? We think not. The language of the statute is "A challenge to the panel can be founded only on a material departure from the forms prescribed by law in respect to the drawing and return of the jury." The adjective, "material," is not used here without meaning, and if any error could be immaterial, this is. A law prescribing the time within which an act shall be done is, ordinarily, directory. If the law is imperative on this point, then a failure for two days to file the list would be fatal. We think the law is in this respect directory, or at least that the error is not material.

The second ground of challenge is that the list was drawn by the clerk, sheriff and justice of the peace, and not by the clerk, in the presence of these other officers, as required. The clerk, having been called, testified to facts showing that the drawing was regular, and that the certificate on the list was erroneous. · To the admission of this evidence *contradicting* the record, the defendant excepted. The evidence was properly received. *Gen. Stat.*, 659, *sec.* 9.

The third ground of challenge specified is, " That it appears from the return of the sheriff to the venire issued to him to summon said jury, that he did not serve the same upon twenty of the jurors named therein, but that he served the summons upon the within named parties to serve as jurors by reading to them." The return of the sheriff is, " I hereby certify and return, that in obedience to the within writ, I did at least six days before the sitting of this Court, serve the summons upon the within named parties, to serve as petit jurors, by reading to them," &c. Though this return is informal, we think it shows a compliance with the statute, the error being merely verbal. And the jurors having been in attendance on the Court, it is perhaps not material how they were summoned.

The fourth ground of challenge alleged is, that the venire was returned by the sheriff to the clerk of the Court, the day before the session of the Court, and not at the opening thereof, as required by law. We do not discover in the bill of exceptions any evidence that the fact is as here assumed, but admitting it to be so, the error is clearly immaterial.

The fifth ground of challenge is not insisted on. It is admitted in the bill of exceptions that " The evidence on the part of the State established the fact that, at New Ulm, in the county of Brown, and State of Minnesota, on the 25th day of December, 1866, Alexander Campbell, the person

The State of Minnesota v. Gut.

named in the said indictment, and one George Liscome, were arrested at the saloon known as the National Hall saloon, in the said town of New Ulm, by the sheriff and other officers of the said county of Brown, and taken to and confined in the jail of said county, which said jail was but a short distance from said saloon. That at the time the said arrest was made a report was very generally circulated through said town to the effect that two half breeds had murdered John Spinner. That in about twenty-five or thirty minutes after the same was first circulated, a large crowd of over 100 men, very much excited, assembled at said jail. That great noise and confusion prevailed in said crowd, and the prevailing cry was, bring out the half breeds, hang the half breeds, out with the Indians. That one of the said witnesses for the State, to wit: George Schneider, testified that the crowd called out that Campbell was the brother of the half breed Campbell whom the people had recently hanged at Mankato for the murder of white people.

That the defendant, John Gut, arrived at said jail after the said crowd had principally assembled there, and about the time the said crowd broke open the said jail and brought out the said Campbell; that the said Gut had no knowledge of the purpose of said crowd in assembling at said jail, until after his arrival there, and all he learned concerning the intention and purpose of said crowd was from the outcry of said crowd, and what he saw after his arrival at said jail; that when said Gut was reproved by the witness for the stabbing of the prisoners, he replied: These two half breeds killed my best friend, John Spinner, and I will kill them; let me alone or I will stab you! That said crowd did break open said jail, and did take out said Campbell, and did hang him by the neck until he was dead, and that said John Gut did participate in the doings of said crowd by stabbing said

Campbell with a knife, both before and after he was hanged by said crowd. That said Campbell and Liscome before they were arrested in said saloon were dressed as follows: Said Campbell had on his head a hood made of dark blue cloth, or blanket, such as is worn by the Sioux Indians. That one of said parties, either Campbell or Liscome, had on Indian moccasins.

That both said Campbell and Liscome wore belts on the outside of all their clothing, in which belts were knife sheaths, and when seen in said saloon by the State witnesses, they had their knives in their hands.

It also appeared from the testimony that said Alexander Campbell was of light complexion, though browned in the face from exposure to the weather. That he was naked when taken out of the jail and stabbed and hanged, except that he wore, or had on, part of a shirt about his shoulders; that his skin (save that upon his face) was as white as that of ordinary white men. That he wore a short beard. That at the saloon said Campbell and Liscome spoke in both the Sioux and French tongues, or a kind of jargon which the witness supposed to be in those languages, and also spoke the English language.

That the whole time from the said arrest until said Campbell and Liscome were killed by said crowd, at said jail, did not exceed thirty minutes. That when being brought out of jail by said mob, their faces were very bloody and dirty."

The defendant interposed the plea of insanity, with the plea of not guilty. The report made to Dr. Muller by those who brought Gut to the hospital was inadmissible as evidence, being merely hearsay. We think the depositions of Brooks, Leitz and Elliott were properly refused, no legal foundation having been laid for their introduction.

Dr. Muller testified, " that they (Brooks, L. & E.) were, at

the time the preliminary examination of the charge made in the indictment against the said defendant John Gut was in progress before Justice Roos, in New Ulm, soldiers in the U. S. Army, stationed at Fort Ridgely, in this State, and that they went away from the Fort to testify on said examination, and that so far as the witness knew they are now in the U. S. Army, stationed at Fort Ransom, in the Territory of Dakota, and have been there several months prior to the sitting of this Court."

Francis Bongall testified that they "left Fort Ridgely to go to Fort Ransom."

This is all these witnesses appear to have said as to the absence of the persons whose depositions were offered, and they are the only witnesses who testified on the subject. Dr. Muller does not appear to have had any knowledge as to their absence, and the witness Bongall did not state when they left, whether they left the State, or what his knowledge was on the subject. No effort appears to have been made to secure their attendance, nor does it clearly appear that their attendance could not have been secured, or that they were outside of the State, or beyond the jurisdiction of the Court. The depositions were therefore properly refused.

The evidence offered to prove that a state of war existed between the United States and Sioux Indians, and that the State, through its legal authorities, had offered a reward for the killing of any male of that tribe, was properly rejected. That it is legal to kill an alien enemy in the heat and exercise of war, is undeniable : but to kill such an enemy after he has laid down his arms, and especially when he is confined in prison, is murder. 1 *Bish. Cr. Law*, 102 ; 2 *Ib.*, 668.

The evidence that war existed between the Sioux Indians and the United States, and that the deceased was supposed to be a Sioux Indian, was therefore immaterial.

It is not pretended that there was a law of our State authorizing the killing of a male of that tribe, and the proclamation or order of any officer of the State could not make that right which is wrong, or legal which is illegal. If such a proclamation or order was made, and if on account thereof any ignorant person was misled into the commission of crime, it is for the Governor to determine whether that would be a proper case for the exercise of executive clemency.

The fact that Campbell had killed one Spinner, a friend of the defendant, is not considered by the law a provocation such as would reduce the grade of this crime from murder to manslaughter.

Punishment for crime is to be inflicted by the officers of the law, and not by any private individual. Had the defendant been present when his friend was killed, and under the excitement of the moment, and in the heat of passion, taken the life of the slayer, it might perhaps be different. The law might esteem this a provocation such as would mitigate the grade of the crime. But that question is not presented in this case. The views above expressed cover the first two propositions given in charge to the jury. The third charge is, "If the defendant has an insane delusion upon any one subject, but commits crime in some other matter not connected with that particular delusion, he is equally as guilty as if he had no insane delusion and was perfectly sane."

There is no error in this of which the defendant can complain. If such a state of mind as is supposed by the Court may possibly exist, the charge is right; if not, the charge did not prejudice the defendant. The fourth charge asked, and the comments thereon, are in these words:

"That the defendant is not entitled to an acquittal on the ground of insanity, if at the time of the alleged offense he had capacity sufficient to enable him to distinguish between

The State of Minnesota v. Gut.

right and wrong as to the particular acts charged, and under-
stood the nature and consequences of his acts, and had men-
tal power sufficient to apply that knowledge to his own case."
The Court in commenting to the jury upon the meaning and
application of this rule said to them, "that whether the de-
fendant, Gut, at the time of inflicting the blows upon the
body of the deceased, knew that the natural or necessary con-
sequences of his acts were to produce the death of the de-
ceased, might be taken into consideration by them in deter-
mining whether he knew or understood the nature and conse-
quences of his acts." The "charge" was correct. *State vs.
Shippy*, 10 *Minn.*, 223. The comments were not erroneous.
The fact that the defendant knew at the time of inflicting the
blows upon the deceased, that the natural and necessary con-
sequences of his acts were to produce death, did not prove
his sanity, but, we think, it was evidence, though very
weak, to be considered by the jury in determining whether
he knew the nature and consequences of his act. The fifth
charge was in these words : "That to reduce the crime of
killing a human being from murder in the first degree, to
manslaughter, the provocation must be such as to excite a
man of ordinarily cool, candid and reasonable disposition, to
the heat of passion." Whether this is right or wrong we do not
consider, for there is nothing in the case to show provocation
of any kind. If there was no provocation, this is a mere abstract
proposition that can not possibly have prejudiced the defend-
ant; if there was, it is for the defendant to show it ; error
will not be presumed. The exception to the sixth charge is
abandoned, and any questions involved in the seventh have
been before discussed. The eighth charge is in the following
language: "If the jury find from the evidence that the de-
fendant, at the time of the killing of Campbell, was so drunk
from the use of intoxicating liquors, not drunk with any view

to the commission of said crime, as not to know what he was doing, the jury can not rightfully convict him of the charge in the indictment." But in modification or limitation of the foregoing charge the Court instructed the jury: "That when the act of killing is unequivocal and unprovoked, the fact that it was committed while the perpetrator was intoxicated, can not be allowed to affect the legal character of the crime. But where the circumstances are such as to raise the question whether the act was the result of design, or the impulse of sudden passion, the intoxication of the accused is a proper subject of consideration. That drunkenness may be taken into consideration in cases where what the law deems sufficient provocation has been given, because the question is in such cases whether the fatal act is to be attributed to the passion of anger excited by the previous provocation, and that passion is more easily excitable in a person when in a state of intoxication, than when he is sober. With regard to the intention, drunkenness may perhaps be adverted to according to the nature of the instrument used. If a man use a stick, you would not infer a malicious intent so strongly against him if drunk when he made an intemperate use of it, as you would if he had used a different kind of weapon. But where a dangerous weapon is used, which if used must produce grievous bodily harm, drunkenness can have no effect on the consideration of the malicious intent. That he who is in a state of voluntary intoxication should be subject to the same rule of conduct, and the same legal inferences as the sober man; but that where a provocation has been received which if acted upon instantly would mitigate the offense of a sober man, and the question in the case of a drunken man is whether that provocation was in truth acted upon, evidence of intoxication may be considered in deciding that question. But that in this case there is no proof of such a provocation."

The charge requested was correct. *State vs. Garvey*, 11 *Minn.*, 154. If some of the modifications or limitations are inconsistent with it, this according to our view of the case is not a ground for reversal or new trial. Our statute declares the killing of a human being "when perpetrated with a premeditated design to effect the death of the person killed, or any human being," murder in the first degree; and where *this design is in fact* wanting, we hold that the crime is not murder of that degree. A party on trial for murder is not to be punished for intoxication. If he did not intend to do the act constituting the crime, he is not to be found guilty of *such intent*, however illegally or immorally he may otherwise have acted. It is recited in the bill of exceptions " that the said John Gut had been drinking, and was to some extent intoxicated on the 25th day of December, 1866, when said Campbell was killed," and also that when he was reproved for the stabbing of the deceased, he replied: " These half breeds killed my best friend, John Spinner, and I will kill them; let me alone or I will stab you." It is with great hesitancy that we say in a criminal prosecution, and especially in a capital case, that any error did not prejudice the defendant; and where there is the least doubt as to its effect, we feel bound to give him the benefit of the doubt. But it appearing that the defendant *intentionally* killed, or participated in the killing of the deceased as a matter of revenge, it is immaterial whether he was intoxicated or not. The crime would be the same in either case, there being criminal intent amounting to a premeditated design, and a criminal act. Besides, it does not appear that the defendant was at the time the crime was committed, in such a state of intoxication as to render him incapable of forming a premeditated design. Hence we conclude that the error in the charge, if there is

error, cannot possibly have prejudiced the defendant, and therefore that it is not ground for reversal.

The charge of the Court "That insanity was a defense, and must be made out, from the evidence, to the satisfaction of the Court, as any other defense," is in accordance with the decision in Bonfanti's case, 2 *Minn.*, 131, *et seq.* The charge of the Court, and its refusals to charge on this point, were therefore, we think, unobjectionable. The views which we have above expressed cover all the questions raised by the defendant. We have discovered no substantial error. The theory and teachings of our law, as well as the dictates of humanity, require the Courts to give to a person accused of crime the benefit of *every doubt* that may exist, either as to the law or facts. But further than this, justice forbids, and mercy does not require them to go. Where there has been any error or irregularity that could possibly prejudice the defendant, it is ground for a reversal. But an error which is not a violation of any positive rule of law, and which could not possibly prejudice him, can not according to any rational rule render invalid the proceedings. The rule on this subject is clearly expressed in *Sec.* 11, *Chap.* 108, *Gen. Stat.*, as follows: "No indictment is insufficient, nor can the trial, judgment, or other proceedings thereon, be affected, by reason of any defect or imperfection in matter of form, which does not tend to prejudice the substantial rights of the defendant, upon the merits."

Judgment affirmed.

---

The above opinion having been filed, the counsel for the defendant moved the Court for a re-argument, on the ground that one of his points—that the act of 1867 is an *ex post facto* law—had not been passed upon.

The motion was allowed, and the defendant's counsel heard. We think the point untenable. Brown county and the coun-

The State of Minnesota v. Gut.

ties attached thereto for judicial purposes, constituted a single trial district, and a law changing the place of trial from one point in the district to another, can not in principle be distinguished from a law changing the place of trial from one point to another in the same county.

Such a law neither directly nor indirectly aggravates or changes either the crime or the punishment, nor does it alter the rules of evidence, or receive less or different testimony than was required at the time of the commission of the offense in order to convict the offender. It does not fall within any class of legislation forbidden by the clause of the Constitution referred to. This question—as to what laws are forbidden as *ex post facto*—we considered and passed upon in an opinion filed at this term in case of *State vs. Ryan*, and therefore we do not feel called upon to farther discuss it here.

The defendant was sentenced on the 1st day of February, 1868, to be executed on the 3d day of April following, and on the 4th day of February the execution of the judgment was stayed, until the determination of the case in this Court. The time of the execution is not an essential part of the judgment. It is for the Judge before whom the conviction is had to designate the time—not less than one nor more than six months—for which the convict shall be kept in solitary confinement, and at the expiration of that time it is the duty of the Governor to issue his warrant of execution. If for any reason his warrant is not issued immediately on the expiration of the time fixed by the Court for the solitary confinement of the defendant, he may afterward issue it, and cause the legal execution of the convict. In this case he may legally issue his warrant, though the day fixed in the sentence for the execution has passed.

We therefore affirm the judgment of the Court below, and direct its sentence to be executed.