## STATE OF MINNESOTA *vs.* MICHAEL WELCH.

### Aug. 7, 1874.

**Indictment for Double Voting.**—An indictment for voting more than once at a municipal election—*Held* to allege with sufficient precision that the election was lawfully held.

**Conviction of Felony, where Evidence Shows also the Commission of a Statutory Misdemeanor.**—A defendant may properly be convicted of the felony of voting more than once at the same election, although it appears from the indictment that, in casting the second vote, he also committed a misdemeanor, by voting in an election district in which he did not actually reside.

**Intoxication no Defence.**—To an indictment for voting more than once at the same election, it is no defence that the prisoner was so drunk when he cast his second vote that he did not know what he was doing, and did not remember that he had already voted at the same election.

**Criminal Intent Presumed.**—Upon the trial of an indictment for voting more than once at the same election, under a statute providing that "whoever votes more than once at the same election, is guilty of a felony, etc.," the only question of fact for the jury is, did the defendant, having already voted, voluntarily cast a second vote at the same election? The law conclusively presumes that all men intend their voluntary acts, and it is the duty of the jury, upon satisfactory proof of the criminal act charged, to find the criminal intent in accordance with the legal presumption.

**Amendatory Statutes.**—A statute amendatory of a public act is itself a public act.

The defendant was tried in the district court for Washington county, *Crosby,* J., presiding, upon the following indictment :

"Michael Welch is accused by the grand jury of the county of Washington, in the State of Minnesota, by this indictment, and upon their oaths, of the crime of voting more than once at the same election, committed as follows :

"That the city of Stillwater is a municipal corporation, within the county of Washington in the State of Minnesota, organized and acting under and by virtue of an act of the legislature of the State of Minnesota, entitled "An act to reduce the law incorporating the city of Stillwater in the county of Washington and State of Minnesota, and the several acts amendatory thereof, into one act, and to amend the same," approved March 3d, A. D. 1870, and the acts

amendatory thereof. That on the 1st day of April, A. D. 1873, the municipal election of said city of Stillwater was then and there in said city being held, under and by virtue of the said act of the legislature above mentioned, and the acts amendatory thereof, and in accordance with law and the statutes in such cases made and provided, for the purpose of electing the officers of said municipal corporation, the said city of Stillwater, as provided and required by said act of the legislature of the State of Minnesota, and the acts amendatory thereof.

" That said Michael Welch did then and there, on said 1st day of April, A. D. 1873, in said city of Stillwater, in said county of Washington, at said election, vote in said city of Stillwater in the first ward thereof, said Michael Welch being then and there a resident and legal voter in said ward in said city ; and said Michael Welch did then and there, on said first day of April, A. D. 1873, in said city of Stillwater in said county of Washington, after the casting by him of the vote above mentioned, wrongfully, wilfully, unlawfully and feloniously vote a second time at said election in said city of Stillwater, said vote being cast by the said Michael Welch in the second ward of said city of Stillwater : both of said votes being then and there by the said Michael Welch voted at the same election, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Minnesota."

At the trial, it appeared that the prisoner was a resident of the first ward in the city, and voted in that ward in the forenoon, and in the afternoon in the second ward. The prisoner was convicted, a motion in arrest of judgment and a motion for a new trial were denied, and he was sentenced to hard labor in the state prison for the term of six months. The objections made to the indictment, and the exceptions taken at the trial, are stated in the opinion.

*James N. Castle*, for appellant.

*Geo. P. Wilson*, Attorney General, for the State.

YOUNG, J. 1. The indictment charges the defendant with

the crime of voting more than once at the general municipal election of the city of Stillwater, held April 1, 1873—the defendant's first vote being cast in the first ward, of which he was a resident, and the second, in the second ward.

By the charter of the city, (Sp. Laws, 1870, p. 83, § 1,) it is provided that the annual election of municipal officers shall be held at such place within the city as the common council shall designate. By the act of March 4, 1873, entitled "An act to amend the charter of the city of Stillwater," the election is to be held at such place in each ward as the common council shall designate. Sp. Laws, 1873, p. 92, § 2. The charter is declared to be a public act, (Sp. Laws, 1870, p. 107, § 14,) and as the act of 1873 is, by its terms, amendatory of the charter, this also is a public act. State v. Bergen, 34 N. J. (Law), 438. The indictment, therefore, charges, with all, if not more than all, the precision necessary, that the election was lawfully held in the two wards in which the defendant is accused of voting. State v. Marshall, 45 N. H. 281; State v. Boynton, 56 Me. 512; State v. Douglas, 7 Iowa, 413.

It is urged that it does not appear that the act of 1873 ever took effect, for it is not shown to have been published. But this amendatory act expressly provides, (p. 102, § 33), that it " shall take effect and be in force from and after its passage," and being of later date, it is pro tanto a repeal of Gen. Stat. ch. 4, § 2, which enacts that " no general law shall take effect until published."

The election at which the defendant's offence is charged to have been committed, was that designated in the charter as " the general city election." It is contended that the two votes cast by the defendant, being cast in different wards, were cast not at the same, but at different, elections. But we are clearly of opinion that the general city election is but one election, although held at the same time in three different places within the city, just as the general state election is one general election, and not as many general state elections as there are election districts in the state.

The indictment need not, (as it does not,) show that the defendant's second vote was cast for the officers, (mayor, treasurer, and city justice,) who were to be voted for at large and in all the wards, and not merely for the aldermen who were to be chosen in the second ward alone. It is the voting more than once at the same election, and not the voting more than once for the same officers, which the statute prohibits and punishes; and it makes no difference whether the same or different officers or candidates are voted for on the two occasions. *State* v. *Minnick*, 15 Iowa, 125; *Steinwehr* v. *State*, 5 Sneed, 586.

The indictment, therefore, sufficiently charges the defendant with the offence of voting more than once at the same election, which is made a felony by § 58, ch. 1, Gen. Stat.; and it does not change the character of the crime charged, that, in the commission of this felony, the defendant also committed a misdemeanor by casting his second vote in an election district in which he did not actually reside—an offence made punishable by § 57 of the same chapter. The motion in arrest of judgment was therefore properly denied.

2. At the trial, the prisoner testified, "I drank considerably during the day (of the election). I don't recollect voting at any of the polls that day. I might have voted three times and not known it. I must have been very drunk. Don't recollect what occurred after morning." Other evidence was introduced, tending to show that the defendant was much intoxicated at the time of the second voting. Evidence was offered, and excluded as immaterial, tending to show that defendant was a lumberman, and on the election day had just returned from a six months' absence in the woods; that he did not know that more than one polling place had been provided; that he did not know who were the candidates to be voted for, was not a partisan, and took no part in the election, except by voting. The exceptions taken to the exclusion of this evidence, and to the refusal of the court to give the 3d, 6th and 7th instructions asked by the defendant, present the same question un-

der two aspects. The defendant's intoxication is relied on as a defence, first, as rendering the defendant incapable of forming the intent to commit a crime; second, as rendering him ignorant of the fact that he was doing the act for which he is indicted.

His counsel insists that "the essence of an offence is the wrongful intent, without which crime cannot exist." This is true; but in cases like the present, where the law declares the act done by the defendant to be a crime, the only question is, did the defendant intend to do the act which the law has forbidden? He does not appear to have cast his vote by accident, or under the constraint of superior force. His act was and must have been wholly voluntary. Every man is conclusively presumed to intend his own voluntary acts. As the defendant must have intended to cast the second ballot, he must have intended to commit the offence charged.

The cases cited by his counsel, except one in California, are cases where the crime of which the prisoner was accused, consisted not merely in the doing of an act, with intent simply to do that act, but in the doing of an act, with intent thereby and by means thereof to compass a criminal end, to accomplish an unlawful purpose. Thus, in prosecutions for larceny, the act of the prisoner—the mere taking—does not constitute the offence, but the act coupled with the intent to steal; and the question is not, did the prisoner take and intend to take the goods? but, did he take them *animo furandi?* So, in trials for murder in the first degree, the question is not merely did the prisoner intend to inflict the blow, (or do any other act), which resulted in death? but, had he a premeditated design to effect the death by means of the act done? And in *State* v. *Garvey*, 11 Minn. 154, the question was not, did the prisoner intend to make the assault? but, did he also intend to do great bodily harm? In such cases, where the crime consists not alone in the act done, and intended to be done, but also in the intent of the prisoner to effect certain results by means of the act, courts have sometimes admitted evidence of the

prisoner's intoxication, as affecting his mental condition and the possibility or probability of his forming a premeditated design, or even an intention, to perpetrate, by means of the act done, the crime wherewith he is charged. *Swan* v. *State*, 4 Humph. 136; *Pirth* v. *State*, 9 Humph. 663; *State* v. *Schingen*, 20 Wis. 74; *State* v. *Bell*, 29 Iowa, 316; *Roberts* v. *The People*, 19 Mich. 417, where many cases are collected; and see *State* v. *Gut*, 13 Minn. 361.

So, in another class of cases—for instance, prosecutions for passing counterfeit money—where the prisoner's knowledge of its falsity is of the essence of the offence, he has been permitted to show that, when he uttered the money, he was so drunk as not to know that it was counterfeit. *Pigman* v. *State*, 14 Ohio, 555.

But it is obvious that such cases have no analogy to the case at bar. This defendant's motive and purpose in voting are alike immaterial. His offence is the same although his two votes were cast for opposing candidates, so that the second neutralized the first. Here, the only question is, did the defendant, having voted in the first ward, intend to vote a second time at the same election? In no case can a defendant, by proof of intoxication, rebut the legal presumption that he knows and intends his voluntary acts. In the instances above cited, the prisoner cannot show that, by reason of his intoxication, he did not intend to take the goods he is charged with stealing; to strike the blow which resulted in death; to pass the money which proved to be counterfeit; nor can he show that, by reason of his intoxication, he did not know that he took the goods, struck the blow, or passed the money.

It is claimed that the defendant was so drunk when he voted the second time that he did not remember that he had already voted, and that the act was innocent, because done in ignorance of this material fact. But this plea of want of memory is like those of want of intent and want of knowledge. The defendant had cast his first vote but a few hours before. In the ordinary course of things, had he remained

sober, it would be no excuse for his offence that he had forgotten, at three o'clock in the afternoon, that he had voted in the morning. It is not pretended that he is not a man of. ordinary memory, and he must be held to the reasonable exercise of the power of memory that he possesses. A man is not the less responsible for the reasonable exercise of his understanding, memory and will, because he has enfeebled his memory, perverted his will, and clouded his understanding, by voluntary indulgence in strong drink. A drunken man, equally with a sober man, is presumed to know and intend the acts which he does, and to remember the acts which he has done. There is, accordingly, no reason why this case should form an exception to the general rule of the criminal law, that " an intoxicated man shall have no privilege by his voluntarily contracted madness, but shall have the same judgment as if he were in his right senses." Hale P. C. 32 ; 1 Bishop Cr. Law, § 489, and cases cited ; *People* v. *Garbutt*, 17 Mich. 19.

In *People* v. *Harris*, 29 Cal. 678, cited by the defendant's counsel, the prisoner was indicted, under a statute similar to our own, for the offence of which this defendant stands convicted. It was held that evidence of his intoxication should be admitted upon the question of his intent to commit a crime, and whether a crime had in fact been committed ; but the opinion was strongly expressed, and often reiterated, that " a state of intoxication can be of no avail as an excuse for crime." It seems to us that a prisoner would have no need of an excuse for an act which his intoxication made innocent, and no crime. There can be no practical difference in the result between holding that intoxication is an excuse for crime, and holding that the acts of a man sufficiently intoxicated cannot be criminal. In either case, a man would be exempted from criminal responsibility for acts done in a state of voluntary intoxication. This doctrine is novel, anomalous and startling. It is a dangerous innovation upon the well established principles of the criminal law, and we have no hesitation in rejecting it.

The 10th charge of the court is taken from 1 Bishop Cr. Law, § 488. The same doctrine, as stated in almost the same words in the following section, was admitted to be the law in *Roberts* v. *The People*, 19 Mich. 417. The correctness of the author's theory of the rule, by which drunken men are held to intend their criminal acts, is immaterial. The rule itself is correctly stated.

There was no practical error in the 11th instruction, viz. : "The defendant is equally guilty whether he intended the act complained of or not. The only *fact* for the jury to find in this case is, whether or not the defendant deposited a ballot both at the first and second wards of this city, on the occasion of the city election, held April 1, 1873. And if you find that he did so deposit the two ballots, you will find him guilty, in manner and form as charged in the indictment."

The language of this instruction is not happily chosen, and cases might easily be supposed where such a charge would unduly restrict the province of the jury, and mislead them into an erroneous verdict. But, as we have already shown, the present case falls within the general rule, that men are presumed to intend their voluntary acts ; and it was the duty of the jury, upon satisfactory proof of the acts done, to find the intent in accordance with the legal presumption. The instruction, in its application to the facts of this case, was therefore substantially correct.

The judgment and the orders appealed from are affirmed, and it is directed that the sentence pronounced by the district court be executed.