## THE STATE v. HUDSON.

1. **Criminal Law: PRACTICE.** Where several parties have been jointly indicted, and they demand separate trials, the order in which they shall be tried may be determined by the district attorney, under the direction of the court.

2. ———: EVIDENCE. Testimony tending to show that defendant, who was indicted as an accessory, furnished money to aid his co-defendant, who had admitted his guilt, to escape, was properly admitted.

3. ——— : ———. After a witness testified that defendant, after being held to answer, told him he would like to settle the difficulty, it was not error to permit him to testify further that defendant "looked as if he felt badly."

4. ——— : ———: PRACTICE. The order in which evidence shall be introduced rests, under the direction of the court, within the discretion of the party introducing it.

5. ——— : ———. The acts and declarations of one who has been shown to have been engaged with defendant in prosecuting the common design are admissible in evidence against him.

*Appeal from Floyd District Court.*

WEDNESDAY, DECEMBER 11.

THE defendant, C. W. Hudson, was jointly indicted with Frank L. Bailey and L. C. Hickock, for the larceny of forty-five bushels of wheat from the granary of one William Hickman. The indicted parties pleaded not guilty, and demanded separate trials. The District Attorney elected to first try the defendant C. W. Hudson. He was tried, convicted, and sentenced to the penitentiary for one year. He appeals.

*Starr, Patterson & Harrison*, for appellant.

*J. F. McJunkin, Attorney General*, for the State.

DAY, J.—I. When separate trials were ordered the defendant Hudson demanded that the other defendants, Bailey and Hickock, be tried first, upon the ground, as shown by the minutes of the testimony taken before the grand jury, that the other defendants admitted

1. CRIMINAL law: practice.

their guilt; that they were the only persons present at and taking an active part in the commission of the crime; and that their evidence is necessary to prove the defendant guilty. The defendant insists that he had a right to have his co-defendants first tried, in order that the fact that they were accomplices might be determined by the judgment of the court, and not left to be established by evidence on the trial of defendant. We think the order of trial in such cases must be left to the discretion of the District Attorney, under the direction of the court. The defendant sustained no possible prejudice by being first placed upon trial. The other defendants, Bailey and Hickock, admitted in their testimony, in the most unequivocal manner, their connection with the crime, and the court instructed that they were criminals upon their own admission, and that upon their testimony, uncorroborated, no conviction could be had. They were just as fully discredited as witnesses as if they had been already convicted of the crime charged.

II. The evidence showed that the defendant Hudson was not present at the time the larceny was committed. If he had any connection with the offense it was as an accessory. The defendant Hickock testified that Hudson suggested and urged the commission of the crime, furnished facilities for its perpetration, and was to participate in its fruits. On Tuesday, the 22d day of February, C. B. Hickock, the brother of the defendant H. C. Hickock, and the defendant Hudson went to Clarksville and returned on Friday. On Wednesday, while they were away, the wheat was stolen. C. B. Hickock testified that he had a talk with Hudson about the matter after they returned, after the arrest of Bailey and before the arrest of H. C. Hickock. The witness was then asked whether or not Hudson gave witness any money to give to H. C. Hickock. The question was objected to as immaterial and irrelevant. Upon the suggestion of the District Attorney that he proposed to follow the testimony with evidence showing the purpose for which the money was given,

the objection was overruled and the defendant excepted. The witness then answered: "He gave me some money to give to his (Clay Hickock's) wife. I don't know how much; I never looked at it." This action is assigned as error. In another part of his evidence this witness testified: "He gave me some money and told me to give it to Clay's wife. I didn't undo it, but I think from the corner there were two one-dollar bills and some change. I took it and carried it to Clay's wife. I think he said it was all the money he had."

Mary Hickock testified as follows: "Hudson, wife and me took supper together. Hudson said to Chet Hickock and me, then, if we saw Clay to send him to him. He said he would get money for Hickock, but it wouldn't do to borrow money, and he hadn't got any money—hadn't got much money. He said they wouldn't catch Mr. Hickock if he could see him and give him some money. He said he would get the money, and if we saw him to send it to him—get some money soon as he could." The defendant H. C. Hickock testified that after he and Bailey waived examination he and defendant walked home together, and the following conversation occurred: "I says to him, 'We have got into it, and the best thing is to get out of it.' He said, 'Yes, I will do all I can.' I told him if I had the money I should have gone away. He said he could not get the money without being suspicioned, any more than what he did send. He sent me two dollars and forty-five cents. He gave it to my brother. My wife gave it to me." If the money was furnished to assist the defendant Hickock in getting away, evidence of the fact would not be immaterial or irrelevant. From the testimony subsequently admitted the jury might, at least, find that the money was furnished for that purpose. We think there was no error in the admission of this evidence.

III. The witness, C. B. Hickock, was asked this question: "State whether or not Hudson told you, in words or in substance, that they were after Clay, or that he knew they were after Clay." The witness answered as follows: "Yes, sir;

he knew they were after him.   So did I."   The defendant moved to strike out the answer that Hudson knew they were after Clay.   The motion was overruled.   Defendant excepted. This action is assigned as error.   It must be evident that the witness may have known, in various ways, that Hudson knew that persons were after his co-defendant Hickock.   If the witness knew this fact we see no objection to his testifying to it. His means of knowledge are subject to test upon cross-examination, and if that should disclose that he had no knowledge upon the subject, or was merely expressing an opinion, the evidence, of course, would be entitled to no consideration.

IV.   This same witness testified as follows : "I talked with Hudson coming from Rockford, after he was arrested and held to answer on Monday.   *   *   *   *   We talked mostly about settling it up if it could be settled. Hudson said he would like to have it settled, and would like to have me see Hickman; he could do nothing with Hickman." The witness was then asked:   "Well, how did Mr. Hudson appear?"   The defendant objected to the question as incompetent.   The objection was overruled.   The witness answered: "I don't know.   He appeared as if he wanted to settle it up; wanted to fix it up if it could be fixed."   The defendant moved to strike out the answer on the ground that it is an opinion of the witness.   The court overruled the motion, and defendant excepted.   The witness was further asked:   "How did he look?   How did he act that day?"   The defendant objected on the ground that it is calling for the opinion of the witness, and is immaterial and irrelevant.   The objection was overruled, and the witness answered:   "Well, he looked as if he felt pretty bad."   These rulings are assigned as error.   There could have been no prejudice to the defendant in permitting the witness to state that he appeared as if he wanted to settle it up, after the witness had directly testified to the fact that defendant said he would like to have it settled, and wanted the witness to see Hickman.   We think, also, that there could have been no prejudice to the defendant in·

permitting the witness to testify that defendant looked as if he felt pretty bad. This disposition disposes also of the seventh assignment of error.

V. L. S. How was introduced as a witness for the State, and testified to a conversation which he had with defendant at Marble Rock, in which he says the defendant stated that the first he heard about the stealing of the wheat was a few moments before, when Johnson told him down street. In cross-examination this witness was asked what relation he is to Bailey. This was objected to as immaterial, and the objection was sustained. This action is assigned as error. While the question might, without any impropriety or error, have been permitted to be answered, still we are not able to see that any prejudice could have been sustained by the defendant by the rejection of it.

VI. When H. C. Hickock was produced as a witness the defendant objected to his testimony on the ground that he is 4. —:—: jointly indicted as an accomplice in the act; that practice. there has been no showing made to the court that he is less guilty than the party on trial; that no order of court has been asked or made that he be received as a witness against the defendant; and that no evidence has yet been offered in the case tending to connect the defendant Hudson with the commission of the offense. The overruling of this objection is urged as error. Appellant relies upon *Ray v. Ray,* 1 G. Greene, 316. The doctrine of this case cannot now be regarded as the law in this State. Section 3636 of the Code provides that "every human being of sufficient capacity to understand the obligation of an oath is a competent witness in all cases, both civil and criminal, except as herein otherwise declared." As to the objection that no evidence had been introduced tending to connect the defendant with the commission of the offense, it is sufficient to say that a party, under the direction of the court, may select the order in which he will introduce his testimony.

VII. The defendant Hickock testified that, on the night of

the larceny, he went to Hudson's with his wife, to do the chores, and stayed there all night. This witness testified, without objection, as follows: "State whether you found any arrangements there at the house so you could go out and in still." "Yes, sir; Mrs. Hudson greased the door some at the time. She greased it with kerosene oil." "State whether anything was offered you to wear." "Yes, sir; she offered me some stockings. I told her I guessed I could wear my boots." "Who offered you the stockings?" "Mrs. Hudson. I think it was about nine or ten o'clock I went out. I found Bailey. He was out there. We then went out and got the wheat."

In the further progress of the examination of this witness he was asked: "What was said there, at the house of Mr. Hudson, that night you started to go out to do this work?" The defendant objected on the ground that the proposed evidence is immaterial, irrelevant and incompetent. The objection was overruled. The witness answered: "In the first place she wanted to know if I was going to do what I intended to do. That was before she offered me the stockings. I told her 'Yes.' She says, 'You want to be careful.' My woman speaks up and says, 'What are you going to do?' Mrs. Hudson told her there was a man out there going to take the wheat. I was going out to watch. My woman told me not to do it. I told her when I went out, I says, 'I won't.'"

From this testimony, which had before been introduced without objection, the jury might, at least, find that Mrs. Hudson was engaged with the defendants in the purpose of stealing the wheat, and that she was furthering, aiding and abetting the common design. If she was thus engaged her acts and declarations became, in contemplation of law, the acts and declarations of the defendant, and they are admissible in evidence against him. This view disposes, also, of the eleventh and twelfth assignments of error.

VIII. The defendant, upon cross-examination, asked of the witness H. C. Hickock a number of questions relating to

the time of his marriage with his wife, Mary Hickock. The questions were excluded as incompetent, immaterial, and beyond cross-examination. It is claimed in argument that the purpose of this cross-examination was to show that, at the time the offense was committed, the defendant was living with the said Mary in a state of adultery, for the purpose of affecting his credibility as a witness. It is conceded that this purpose was not disclosed to the court; if it had been, probably the cross-examination would have been permitted. Without any explanation of the purpose and bearing of the proposed evidence, it appears to be beyond the proper scope of cross-examination. This view disposes, also, of the thirteenth error assigned.

IX. Several questions were excluded which were asked the witness Mrs. C. B. Hickock, tending to show her interest in and sympathy for her brother-in-law, the defendant H. C.. Hickock. In the exercise of judicial discretion these questions might, without error, have been admitted; and yet we cannot say that, for the exclusion of them, the case should be reversed. The jury would hardly be authorized to conclude that the witness was prejudiced against the defendant on trial, from the fact that she was interested in and sympathized with his co-defendant. The proposed evidence would not have been sufficient to show that the witness was an accomplice in the commission of the crime. This disposes, also, of the sixteenth assignment of error.

X. Mrs. Hudson was introduced by the defendant, and asked the following question: "State whether you had any knowledge, or had ever heard at any time, that your husband had harnessed up his team, the Sunday night before, to take this wheat." Upon the objection of the State this question was excluded. Appellant insists that this interrogatory was proper for the purpose of showing that Mrs. Hudson was not a co-conspirator, and had no knowledge of any guilty acts of her husband, and to show absence of knowledge of a matter that the witnesses of the State swore she conversed about. The

witness had before testified as follows: "Mr. Hudson was at home that Sunday before the wheat was stolen. I have no knowledge of my husband harnessing his team that evening, or having them harnessed, or anything of the kind. My husband never said anything to me about harnessing his team that evening, either then or since." The witness having once testified fully respecting the matter embraced in this interrogatory, there was no error in refusing to allow her to repeat it.

XI. The instructions asked by the defendant, so far as applicable and proper, are sufficiently embodied in the instructions given. The charge of the court is very full and fair, covering every phase of the case, and is, so far as we can discover from the argument presented by appellant, without error.

XII. The evidence is conflicting. There is not such a want of evidence to support the verdict as would warrant our disturbing it.

AFFIRMED.