Goodwin *v.* The State.

No. 9675.

## GOODWIN *v.* THE STATE.

CRIMINAL LAW. —*Murder.*—*Evidence.*—*Threats.*—*Consideration by Jury.*—It is competent for the State, in a prosecution for murder, to prove threats made by the accused against the deceased, although made a long time prior to the homicide, but in determining their weight the jury may consider their remoteness from the time of the homicide.

.SAME.—*Declarations of Accused.*—*Effect of Ruling on Competency.*—Where the declarations of an accused are susceptible of more than one interpretation, it is for the jury to determine from the evidence what interpretation they shall have, and the court, in ruling them to be competent, does not determine that they shall have an interpretation adverse to the innocence of the defendant.

SAME.— *Witness.*—*Expert.*—*Definition of Words.*—There is no error in refusing to permit an expert witness, on the direct examination, to give a definition of a word which has a fixed and well known signification.

:SAME.—*Hypothetical Questions.*—*Evidence.* —It is not necessary to embody in a question asked an expert witness all of the matters of which there is any evidence; such a question is proper if it embodies such material facts, fairly within the range of the evidence, as counsel deem to have been proved.

SAME.—*Opinion of Witness as to Accused's Power of Control.*—It is not error to refuse to permit a witness to express an opinion as to whether a person accused of crime can or can not control his appetite for intoxicating liquor.

:SAME.— *Voluntary Drunkenness.*—Voluntary drunkenness is no excuse for the crime of homicide.

SAME.—*Evidence.*—*Discretion of Court.*—*Supreme Court.* —The trial court may permit the State to introduce evidence after the defendant has closed his evidence, and the Supreme Court will not reverse a judgment unless the trial court has abused its discretionary power in this respect.

.SAME.—*Insanity.*—*Effect of Order of Commission.*—The order of a commission composed of two justices of the peace and a physician, de-.claring a person to be insane and entitled to admission to the hospital for the insane, is not conclusive, and the State may introduce evidence tending to show the defendant's sanity, both before and after his admission into the hospital.

;SAME.—*Opinion of Non-Expert Witness.*—A non-expert witness must state .the facts upon which he bases his opinion, but if he states that he has had an acquaintance with the accused, and has had conversations and dealings with him, he may then express an opinion.

:SAME.—*Instructions.*—Instructions are to be taken together, and if when so taken they express the law correctly, there is no available error.

Goodwin *v.* The State.

SAME.—*Criminal Responsibility.*—Where one has mental capacity sufficient to fully comprehend the nature and consequences of an act and unimpaired will power strong enough to master an impulse to commit a crime, there is criminal responsibility, and an instruction embodying this doctrine is a correct expression of the law.

SAME.—*Mental Depravity.*—It is not error to instruct the jury that mere mental depravity is not insanity.

SAME.—*Delirium.*—*Instructions.*—An instruction, that "Insanity of a permanent nature, when once shown to exist, is presumed to continue until the contrary appears, but where *delirium tremens* is set up as a defence, the delirium must exist at the time the act was committed, as there is no presumption of its existence from antecedent fits from which the offending person has recovered," is a substantially correct statement of the law.

SAME.—*Value of Testimony of Expert Witness.*—It is proper to give the following instruction: "The opinions of medical experts are to be considered by you in connection with all the other evidence in the case, but you are not bound to act upon them to the exclusion of all other evidence. Taking into consideration these opinions, and giving them just weight, you are to determine for yourselves, from the whole evidence, whether the accused was or was not of sound mind, yielding him the benefit of a reasonable doubt, if any such doubt arises."

SAME.—The ruling in the case of *Guetig* v. *State*, 66 Ind. 94, approving instructions set forth in the opinion in that case adopted and followed.

SAME.—*Insanity.*—*Perversion of the Affections.*—A perversion of the affections does not constitute insanity, if there is mental capacity sufficient to fully comprehend the nature and consequences of a criminal act, and no disease of the will power impairing its strength.

SAME.—*Declarations of Inmate of Hospital for the Insane.*—An instruction, that "Any statement, declaration, or admission of the defendant that may have been introduced in evidence by the State, made while he was an inmate of the Indiana Hospital for the Insane, must be regarded and held by you in your consideration thereof, as the statement, declaration, or admission of a person of unsound mind, and allowed no weight whatever against the defendant, unless the evidence in this case proves to your satisfaction beyond a reasonable doubt, that the defendant was of sound mind when he made such statements, admissions, or declarations," was held to have been correctly refused.

SAME.—*Motives.*—It is not error to refuse an instruction, unless it is the duty of the court to give it in the terms in which it is prayed, and there is no error in refusing an instruction which gives undue prominence to the absence of motive, and to the fact that the homicide was committed under circumstances which rendered detection and arrest inevitable.

Goodwin *v.* The State.

SAME.—*Frenzy.*—A frenzy arising from passion is not mental unsoundness within the meaning of the law.

From the Franklin Circuit Court.

*J. W. Gordon, R. N. Lamb, S. M. Shepard* and *S. S. Harrell,* for appellant.

*F. T. Hord,* Attorney General, and *B. Burke,* Prosecuting Attorney, for the State.

ELLIOTT, J.—The appellant was convicted of murder in the first degree, and sentenced to the State's prison for life. The evidence conclusively proves that he shot to death his brother, John R. Goodwin, and the only question for the decision of the jury which, under the evidence, fairly admitted of dispute, was as to the mental condition of the accused at the time the homicide was committed.

Threats of the accused to shoot his brother, made thirty years before the homicide, when the former was a lad of fifteen, were proved, and the ruling of the court admitting this evidence is assailed as erroneous. There was other evidence of long continued hostility of the accused towards the deceased, and it can not be said, as matter of law, that ill-will may not begin in boyhood and continue into the years of manhood. The existence and continuance of malevolent feelings was a question of fact, and it was proper to submit to the jury all evidence bearing upon that question, leaving to them the decision of its credibility and weight.

Threats against life are always admissible against an accused, but their remoteness from the time of the homicide is a circumstance to be considered in determining the weight and effect to be assigned them. *People* v. *Cronin,* 34 Cal. 191; *State* v. *Ford,* 3 Strob. (S. C.) 517; *Keener* v. *State,* 18 Ga. 194.

Witnesses were allowed to state the contents of a letter written by the accused, wherein he directed the person to whom it was addressed to get his pistol from his brother, and retain it until his return from the place where the letter was

Goodwin v. The State.

written. There was no error in admitting this evidence. The foundation for the admission of secondary evidence had been laid by proof of the destruction of the letter, and the only question is as to the relevancy of the testimony. It is always proper to give evidence of the preparation for crime, such as the purchase or procurement of weapons, and it was not, therefore, improper to give evidence tending to show that some time before the homicide the accused took measures to secure a deadly weapon. It was proper to allow the evidence of the direction to secure and retain the pistol to go to the jury, and in so ruling the court did not decide anything as to the weight and effect of such evidence. In adjudging that evidence is competent, the court does not, as counsel assume, instruct the jury that it is to influence their decision; the court does no more than declare that the evidence is entitled to be heard; all else is left to the judgment of the jury.

Where the declarations of an accused are susceptible of two interpretations, one consistent with innocence, the other indicative of guilt, they are admissible in evidence. Attendant circumstances or connected facts may greatly modify, and, indeed, completely change, the meaning and effect of ambiguous expressions. Such declarations are to be considered in connection with all the other evidence in the case and are to be interpreted by the light it throws upon them.

Counsel are in error in assuming that the court in ruling that such declarations are admissible decides that they shall receive an interpretation inconsistent with innocence. The ruling has no such effect, for it extends no further than a decision that they shall be heard and considered in connection with the other evidence, leaving to the jury the duty of annexing to them their just signification.

The court refused to permit one of the appellant's witnesses to answer this question : " If the defendant was different from other people in his manner of living, or acting, or speaking, or eating, state in what respect ? " In this there was no error.

The question opened entirely too wide a field of investigation. The sanest men differ in their habits of life and conduct, and no good could have resulted from entering upon such a boundless field of inquiry. Criminal responsibility is not measured by men's peculiarities of habit, or eccentricities in modes of living. Comparisons such as that which the question called upon the witness to make would embarrass and perplex juries, rather than assist and enlighten them. The counsel were allowed to elicit from the witness not only an opinion of the mental condition of appellant, but also a full account of his habits, conduct and declarations, and thus received all the benefit from the witness's testimony that they had any right to ask.

There was no error in refusing to permit one of the expert witnesses called by the appellant to give the jury a definition of the word " monomania." It is not proper to ask witnesses to define words which have a fixed and well known signification, except, perhaps, in cross-examination.

It is contended with great earnestness and ability that the prosecutor, in propounding a hypothetical question to an expert witness, where insanity is the point in issue, must embody in his question all the matters of which there is any evidence; in other words, that the whole case must be embodied in the assumption made in the question of the examining counsel. In support of this contention we are referred to *People* v. *Thurston,* 2 Park. Cr. C. 49. We are unwilling to follow that case, for we are firmly convinced that it is unsound in principle, incapable of just application in practice, and unsanctioned by authority. A doctrine which requires a prosecutor to assume and embody in one question conflicting testimony can not be defended on any ground consistent with sound reason. It would operate unjustly in practice, because it would impose upon an examining counsel the necessity of assuming as true that which he denies in fact, and thus the jury would be confused and perplexed by an apparent

admission of facts antagonistic to the theory of the prosecution. It would require the court, whenever an objection was interposed, to determine what facts were proved, and what were not, and thus compel an invasion of the province of the jury. It would produce endless wrangling and confusion, darken and obscure the investigation of the recondite subject of mental capacity, and place the falsest testimony and the absurdest statements on an equality with the truest and most reasonable. On the other hand, no harm can be done the accused by holding that the examining counsel may assume such a case as the evidence in his judgment makes out, and which keeps within the range of the relevant testimony, because the prisoner's counsel may, on cross-examination, add to the hypothetical case supposed by the prosecutor, such facts as he deems the evidence to have established, or subtract from it such facts as he supposes to have been disproved, or not to have been proved. We are not without decisions in our reports. In *Bishop* v. *Spining*, 38 Ind. 143, WORDEN, C. J., admirably stated the rule: " The party seeking an opinion in such case may, within reasonable limits, put his case hypothetically as he claims it to have been proved, and take the opinion of the witness thereon, leaving the jury, of course, to determine whether the hypothetical case put is the real one proved." This doctrine is asserted in the cases of *Guetig* v. *State*, 66 Ind. 94, *Nave* v. *Tucker*, 70 Ind. 15, *Davis* v. *State*, 35 Ind. 496 (9 Am. R. 760), and is well sustained by the decisions of other States, as the citations given by Wharton in his work on criminal evidence abundantly show. We find in the case of *Cowley* v. *People*, 83 N. Y. 464 (38 Am. R. 464), a statement of the rule which deserves repetition. In speaking of a hypothetical question the court said: " The very meaning of the word is that it supposes, assumes something for the time being. Each side, in an issue of fact, has its theory of what is the true state of the facts, and assumes that it can prove it to be so to the satisfaction of the jury; and

so assuming, shapes hypothetical questions to experts accordingly. And such is the correct practice." *Guiterman* v. *Liverpool, etc., Co.,* 83 N. Y. 358.

It was not error to refuse permission to ask a non-expert witness whether the accused could control his appetite for intoxicating liquor. Men who are not insane must control their appetites and passions. With quite as much propriety might a witness be asked in a case of rape whether the accused could control his lustful desire, and with just as much reason might a witness be asked whether a prisoner could control his anger or master his desire for revenge, and to permit such things to excuse crime would be to break down all law and set a premium on masterful evil passions. While the law shields from punishment one who does an act when insane from the continued use of intoxicating liquor, it does not permit him to set up his voluntary drunkenness as an excuse for taking human life. If the rule for which counsel contends should prevail, then the common drunkard, whose appetite controls his mind and will, may with impunity commit the gravest crimes, but, happily, the law is subject to no such reproach. *Cluck* v. *State,* 40 Ind. 263 ; *Gillooley* v. *State,* 58 Ind. 182 ; *Bradley* v. *State,* 31 Ind. 492 ; *People* v. *Ferris,* 2 Crim. L. Mag. 18 ; *State* v. *Hundley,* 46 Mo. 414 ; *Carter* v. *State,* 12 Texas, 500 ; *U. S.* v. *McGlue,* 1 Curtis C. C. 1.

The question in this case was not whether the appellant could refrain from strong drink, but whether he was insane when he slew his brother. If, however, the question had been the power of the accused to refrain from the use of liquor, the interrogatory would have been improper, for the reason that it is not competent to ask a witness whether a man has capacity to do or refrain from doing a particular thing. It is proper to inquire generally as to mental capacity, but it is not proper to inquire whether there is or is not capacity to do a specific act, as, for instance, to execute a will, make a contract, or commit a designated crime. 2 Taylor Ev. 1229.

The appellant's counsel assail the action of the court in

permitting Thomas A. Goodwin to testify after the evi-dence for the defence was in, but we can not reverse upon this ground. The matter of admitting evidence in reply is so much within the discretion of the trial court that the appel-late courts uniformly refuse to interfere unless it clearly ap-pears that there has been an abuse of discretion resulting in manifest injury to the accused. *Merrick* v. *State,* 63 Ind. 327 ; *Pittsburgh, etc., R. R. Co.* v. *Noel,* 77 Ind. 110 ; *Case* v. *Grim,* 77 Ind. 565 ; *Carter* v. *Zenblin,* 68 Ind. 436 ; *Gardiner* v. *People,* 6 Park. C. C. 155 ; *State* v. *Hudson,* 50 Iowa, 157 ; *Phillips* v. *State,* 6 Texas App. 44.

The case before us is not one warranting our interference. We are, moreover, inclined to think that the material parts of the witness's testimony were strictly competent in rebut-tal. The conversations which the witness had with his brother, the appellant, while they tended to prove motive, tended also to prove that the accused conversed intelligently and possessed full command of his reasoning faculties and will power. We do not understand that testimony tending to show sanity is to be rejected because it bears against the accused upon some other point.

The evidence shows that the appellant was examined be-fore a commission composed of two justices of the peace and a physician, declared insane, and ordered to be committed to the hospital for the insane. The judgment of the justices, even if competent evidence at all, was not conclusive upon the question of appellant's sanity, and it was competent for the State to introduce evidence tending to show his mental condition be-fore and after the proceedings before the justices. The stat-ute authorizing such proceedings does not contemplate that they shall be conclusive adjudications, but that they shall have the effect to entitle the person pronounced insane to be placed in the hospital for treatment. The proceedings do not estop the person declared insane from asserting his sanity, nor do they preclude others from litigating that question.

It is settled law that a non-expert witness must state the

facts upon which he bases his opinion.    There must be some
facts upon which the opinion can rest, or it must not be ex-
pressed ; what facts are sufficient to justify the formation and ex-
pression of an opinion by a non-expert witness, it is by no means
easy to declare. It is, however, agreed by the authorities that
if the witness shows an acquaintance with the accused, that
he has had conversation with him, or that he has had busi-
ness dealings or social intercourse with him, he may, having
stated the facts, express an opinion.    *Colee* v. *State,* 75 Ind.
511 ;   *Leach* v. *Prebster,* 39 Ind. 492 ;   *People* v. *Wreden,* 12
Reporter, 682; *State* v. *Felter,* 25 Iowa, 67 ;   *Schlencker* v.
*State,* 9 Neb. 241 ;   *Powell* v. *State,* 25 Ala. 21 ;   *Stubbs* v.
*Houston,* 33 Ala. 555.

The value of an opinion expressed by a non-expert wit-
ness depends upon the facts on which it rests, but its compe-
tency is not measured by this standard, for an opinion of little
value may nevertheless be competent.    If any material facts
at all are stated by the witness warranting the inference that
he has sufficient knowledge to form an opinion, it is the duty
of the court to permit it to go to the jury for whatever it may
be worth.    We have read with care the testimony of all the
non-expert witnesses named in the brief of counsel, and see
no reason to doubt the correctness of the ruling of the trial
court holding their opinion competent.

The fourteenth instruction is an exact copy of one ap-
proved in the case of *Binns* v. *State,* 66 Ind. 428, and on the
authority of that case we hold that there was no error in giv-
ing it, although we can not regard the instruction as a model
worthy of imitation.    The instruction immediately following
the one just mentioned reads thus : " In the grade of felo-
nious homicide there must be the element of malice and pre-
meditation.    If either of these elements be absent, there can
be no conviction of this grade of homicide.    A premeditated
design or purpose is one resulting from thought and reflec-
tion.    A design conceived and afterwards so deliberately con-
sidered as to become resolved and fixed is regarded by the law

as premeditated." The objection to this instruction is that it contradicts the one preceding it, but we are not inclined to adopt this view. We think it is to be considered in connection with the former, and when the two are taken together, as they may well be, they express the law as favorably to the appellant as was proper. *Binns* v. *State, supra; Achey* v. *State,* 64 Ind. 56.

It was not error to inform the jury, as instruction number seventeen did, that among the usual evidences of premeditation are previous preparation to take life, expressions of ill-will and hatred, and previous threats to kill.

The twenty-third instruction is somewhat confused, but, taken in connection with those which immediately precede and follow, its meaning is very plain. In the twenty-second instruction the jury were told, among other things, that, " Under our law a person of unsound mind can not be convicted of any crime," and when this is read in connection with instruction twenty-three, the meaning of the latter instruction is that no matter what may have caused the mental unsoundness the defendant was entitled to an acquittal; but, although there was some mental derangement, still if " he had mental capacity sufficient to adequately comprehend the nature and consequences of his act, and unimpaired will power fully sufficient to control an impulse to commit crime, he was not entitled to an acquittal upon the ground of mental incapacity." Thus understood—and taking it in connection with the instruction with which it was closely associated, no reasonable man could have otherwise understood it—the instruction correctly expressed the law.

We are not disposed to question the soundness of the rule that instructions must not be contradictory; but we do affirm that one instruction may be qualified and explained by another intimately connected with it, and that if all the instructions upon the same point, taken together, correctly state the law, there is no error. *Achey* v. *State, supra.* As said in a recent work, " The jury are presumed to have understood

the charge according to the fair import of its terms when taken together." Thompson Charging the Jury, 173.

Where there is mental capacity sufficient to fully comprehend the nature and consequences of an act, and unimpaired will power strong enough to master an impulse to commit a crime, there is criminal responsibility. This subject has been so ably and thoroughly discussed of late that it needs no discussion from us. The only doubt unsolved is whether it is proper to separate the will power from the understanding, but this has been done by our cases, as well as many others, and we must take it as a settled principle. *Guiteau's Case*, 3 Crim. L. Mag. 347 ; S. C. 10 Fed. R. 161, and notes ; *Bradley v. State*, 31 Ind. 492.

The twenty-fourth instruction is criticised because it informs the jury, among other things, that mere mental depravity is not insanity ; but the criticism is unjust. This doctrine of moral insanity never did have a place in the law, and is now repudiated by the better authority. This is proved in the authorities cited in the note to *Guiteau's Case*, 3 Crim. L. Mag. 375, Fed. R. 161, and North Am. R., January, 1882.

This instruction is also criticised because it says that " depression following from physicial illness, and such as in all respects ordinarily takes place with men possessing fair average mental powers," is not insanity. There is no ground for criticism. If what the instruction asserts is not law, then it is law that the depression ordinarily resulting from physical illness makes men insane, and excuses them from the consequences of criminal acts, and this surely is a conclusion that no reasonable man would undertake to maintain.

The twenty-fifth instruction is copied from one approved in *Guetig* v. *State*, 66 Ind. 94 (32 Am. R. 99), and is a correct statement of the law. Instructions to Juries, 524.

The 29th instruction reads thus : " Insanity of a permanent nature, when once shown to exist, is presumed to continue until the contrary appears, but where *delirium tremens* is set up as a defence, the delirium must exist at the time the

act was committed, as there is no presumption of its existence from antecedent fits from which the offending party has recovered." There is nothing in this instruction of which the appellant can justly complain. Whether it states the law too strongly against the State in the introductory sentence we need not inquire, for, if it did, that would afford appellant no reason for complaint. It certainly states the law correctly as to *delirium tremens*, for this is a mere transient derangement of the mind, and there is no presumption of its recurrence or continuance. 2 Bishop Crim. Proc., section 674. We think the instruction was not irrelevant to the case made by the evidence. We do not understand that the court in charging the jury is bound to confine itself to such phases of the case as counsel deem the important ones, but may instruct upon all the material phases which the case may assume under the evidence.

The thirty-first instruction reads thus: "The opinions of medical experts are to be considered by you in connection with all the other evidence in the case, but you are not bound to act upon them to the exclusion of all other evidence. Taking into consideration these opinions, and giving them just weight, you are to determine for yourselves, from the whole evidence, whether the accused was or was not of sound mind, yielding him the benefit of a reasonable doubt, if any such doubt arises." The objection urged against this instruction is that it informs the jury that the testimony of experts is not entitled to greater weight than that of non-expert witnesses. We do not think the argument is correct either in point of fact or law. The instruction does not, as counsel assume, direct the jury to act upon one class of evidence to the exclusion of the others, but in plain terms instructs them to consider the whole evidence. But counsel's theory of the law is radically wrong. It would have been error for the court to tell the jury that the expert witnesses, speaking merely as to matters of opinion, and basing their opinions on

hypothetical questions, were entitled to more credit than witnesses who had knowledge of facts gathered from personal observation and who based their opinions on actual facts and not supposed cases. As both kinds of evidence are competent, the jury are charged with the duty of determining the weight and effect of the evidence in each particular case, and the court has no right to charge them to give preference to the one class or the other. *Tatum* v. *Mohr*, 21 Ark. 349 ; *Chandler* v. *Barrett*, 21 La. Ann. 58 ; *State* v. *Bailey*, 4 La. Ann. 376.

Instruction thirty-two is substantially copied from instruction number fifteen in the case of *Guetig* v. *State, supra*, of which the court there said : " Instructions numbered 13 and 15 properly express the law, and are fully sustained by the authorities cited under question numbered 2, already discussed."

There was no error in charging the jury, as was done in the thirty-fifth instruction, that they should carefully scrutinize the evidence upon the subject of insanity. It is the duty of jurors to carefully consider and weigh such evidence, and to give it the weight and credit which their judgments and consciences deem it entitled to receive. *State* v. *Martin*, 3 Crim. L. Mag. 44 ; *Guiteau's Case, supra.*

Counsel select from this instruction a clause reading thus : " The evidence to this point should be carefully considered and weighed by the jury, for the reason that if the accused was, in truth, insane at the time of the commission of the alleged acts, then he ought not to be punished for such acts," and urge that this entitles them to a reversal, because, as they say, the question was, not whether the accused was in truth insane, but whether the jury entertained a reasonable doubt on that subject. The objection is not well taken. The court was not informing the jury as to the degree of evidence required to convict the accused, but was simply assigning a reason why the evidence deserved careful scrutiny. Other instructions fully and correctly defined the degree of evidence

Goodwin v. The State.

required, in order to entitle the State to a verdict of conviction, and the jury could not have been misled.

The eighth instruction asked by the appellant was correctly refused, for the reason that the propositions of law stated in it were contained in the instructions given by the court. Where the instructions of the court fully cover the ground and correctly state the law, it is not error to refuse instructions upon the same subject, although they are correct expositions of the law.

The theory of the tenth instruction asked by the accused and refused by the court is, that if one labors under a perversion of the affections, irresistibly impelling him to crime, the law holds him guiltless. This is an affirmance of the doctrine of moral insanity, of which we have already expressed our opinion. Where there is sufficient mental capacity to fully comprehend the character and consequences of a criminal act, and no disease of the will power impairing its strength, there can be no acquittal upon the ground of a perversion of the affections. If it were otherwise, then the husband or lover who has his affections perverted by a fit of jealousy, and takes the life of his wife or mistress, could not be deemed accountable, and against this conclusion the conscience and judgment revolt. The man whose understanding and will power are not diseased must not yield to the sway of perverted affections. If he does yield, and takes human life, he must suffer the punishment the law affixes to felonious homicide. Present, the mind to judge and know, the will to govern and control, there is criminal responsibility, although there may be a perversion of the affections and hatred may have taken the place of love.

Of several of the instructions asked and refused, we deem it only necessary to say that they were fully and fairly embraced in those given by the court, and where this is the case a refusal to repeat the rules of law is not error.

The court was not bound to instruct the jury to disregard

the testimony introduced in reply to that of the defence, even though it tended to prove malice and premeditation. We have already disposed of this question in what we have said as to the authority of the court to allow the State to give evidence in chief after the close of the evidence of the defendant.

The fifteenth instruction asked and refused reads thus: "Any statement, declaration, or admission of the defendant that may have been introduced in evidence by the State, made while he was an inmate of the Indiana Hospital for the Insane, must be regarded and held by you in your consideration thereof, as the statement, declaration, or admission of a person of unsound mind, and allowed no weight whatever against the defendant, unless the evidence in this case proves to your satisfaction beyond a reasonable doubt, that the defendant was of sound mind when he made such statements, admissions or declarations." The court did right in refusing this instruction. It assumes that the fact that the appellant was confined in the hospital is *prima facie* evidence of insanity, and this is an assumption the court had no right to make. The question was one for the jury upon all the evidence. It would have been error for the court to have singled out the commitment to the hospital and to have affirmed that it proved insanity. On a question very similar to that before us, the Supreme Court of Ohio said: " Ordinarily, such inquisitions are not conclusive, but only *prima facie* evidence of incapacity, as will be seen from the authorities cited ; but, on a question like that in issue here, it is manifest they can not be regarded as even *prima facie* evidence." *Wheeler* v. *State*, 34 Ohio St. 394. It is maintained with much force in *Leggate* v. *Clark,* 111 Mass. 308, that the evidence is incompetent, and we are not prepared to say this is not the correct rule. The statute did not intend to do more than provide a method of procedure limited and restrained to a single purpose, and there is much reason for declaring that the judgment of the commission is not evidence in a civil action or a criminal prosecution. It is a very different thing from an inquisition of lunacy, for in such a

proceeding the *status* of the party is fixed as to all the world; while the statutory inquiry by the justices is restricted to one specific purpose. But we need not determine the competency of the evidence, for that question is not before us. Conceding that the judgment of the commission was some evidence, it would not have been proper for the court to fix and determine its weight and value.

For another reason the instruction was rightly refused. The declarations made while the accused was in the insane hospital were admissible upon the question of his mental condition at the time, and the instruction, if given, would have excluded them from the consideration of the jury solely on the ground that he had been committed to the hospital. This would have assigned to the judgment of the justices an effect far greater than it was entitled to. The judgment did not conclude the State from inquiring as to the appellant's sanity while he was in the hospital, and the right to make this inquiry necessarily involved the right to give evidence of his statements. These statements were entitled to be received upon the question which the instruction wrongly assumes the judgment of the commission to have settled. It was proper to consider the conduct and declarations of the accused while in the hospital on the question as to his mental condition at that time, and it would have been erroneous to charge the jury, as this instruction proposed, that the conduct of the accused while in the hospital should not be considered upon that question, unless his sanity was proved beyond a reasonable doubt by other evidence. The instruction does not assert that the declarations shall not be considered upon one question, but broadly asserts that they shall not be considered upon any question, thus asking that they be excluded from consideration on the question of sanity as well as on all other questions.

The sixteenth instruction, asked by the appellant, is as follows: " It will be proper for you to inquire what motive, if any, consistent with sanity is shown by the evidence to have

existed in the mind of the defendant for taking the life of the deceased in the way, place, and circumstances in which the act was done; and if there is a want of such motive, as shown by the whole evidence, for the alleged crime, the fact that it was done under circumstances which rendered detection and arrest inevitable, if it was so done, are important points for your consideration, especially when coupled with evidence of insanity on any particular point."

It is not error to refuse an instruction unless it is the duty of the court to give it in the terms in which it is prayed. *Lawrenceburgh, etc., R. R. Co.* v. *Montgomery*, 7 Ind. 474; *Roots* v. *Tyner*, 10 Ind. 87; Thompson Charging the Jury, section 86; Proffatt Jury Trial, section 440. Our inquiry, therefore, is whether the court was bound to read the instruction to the jury as it was written.

One of the evidences of crime and sanity is the presence of a motive in the mind of the accused. " Motive," said the Court of Appeals of New York, " is an inducement, or that which leads or tempts the mind to indulge the criminal act. It is resorted to as a means of arriving at an ultimate fact, not for the purpose of explaining the reason of a criminal act which has been clearly proved, but from the important aid it may render in completing the proof of the commission of the act when it might otherwise remain in doubt. With motives, in any speculative sense, neither the law nor the tribunal which administers it has any concern." *People* v. *Bennett*, 49 N. Y. 137. Motive precedes purpose, intent, and design, and is the influence which creates purpose and design. Sane men are generally regarded as acting from motive, although it is said there may be motiveless crimes. Wharton and Stille Med. Juris., section 405; Wharton Cr. Ev., section 784; *State* v. *Cohn*, 9 Nev. 179; *State* v. *Larkin*, 11 Nev. 314. The absence of motive is regarded as a fact tending to show that the criminal act was the product of a mind incapable of forming an intent. It is not, however, true that because the motive is not apparent it is to be pre-

sumed that none existed, nor is it true that an absence of motive proves a man insane, or proves him innocent. There are many recorded cases where atrocious crimes were committed in sheer recklessness, neither the hope of gain nor the gratification of any passion prompting the act. Wharton Crim. Ev., section 784, auth. n. Exceptional cases there are, but the general rule unquestionably is that sane men are influenced by motives, while the insane are motiveless. The presence of motive is, in general, evidence of sanity; its absence is evidence of insanity, but in neither case is the evidence conclusive. It would have been proper for the court to instruct the jury that evidence of the absence of motive was entitled to consideration upon the question of mental capacity, but we are inclined to the opinion that it would not have been proper to characterize it as important evidence. *Karow* v. *Continental, etc., Co.*, 15 Cent. L. J. 233; *Clough* v. *State*, 7 Neb. 320.

The instruction refused does more than assert that the absence of motive is an important matter for the consideration of the jury; it connects other facts with it, and asserts the same thing of them. One of the facts thus made prominent is that referred to in the clause of the instruction which reads thus: "The fact that it was done under circumstances which rendered detection and arrest inevitable." If this instruction had been given as asked, it would have allotted undue prominence to the fact that the homicide was committed under such circumstances as made detection inevitable. The fact that a crime is openly committed, and that the perpetrator commits it at a time and place which render his arrest certain, is not one tending to show insanity or prove innocence. The most heinous murders are frequently perpetrated under circumstances which render escape impossible. Homicides prompted by such evil passions as jealousy, revenge and anger, are more often committed in open day and in frequented places than in secret. This the reported cases fully show. No inference of insanity, no presumption of innocence, can arise

from the fact that the homicide was committed under such circumstances as made detection and arrest inevitable.

The instruction emphatically asserts that the fact that the killing was done under circumstances surely leading to detection is an important consideration; for, connecting this fact with that of the absence of motive, it affirms that these "are important points" for the consideration of the jury, "especially when coupled with evidence of insanity on any particular point." The meaning of this is, that the fact of the absence of motive, as well as that the killing was done under circumstances making detection inevitable, are, in any event, both important matters for the consideration of the jury, but especially so if there is evidence of insanity. Thus understood, and giving the words used their just and ordinary signification, the instruction can not be understood in any other way; the instruction asserted an erroneous proposition, because the fact that the killing was done under circumstances making detection and arrest certain is not to be considered as an important fact ranging alongside of absence of motive or evidence of insanity.

It is error to give undue prominence in instructions to unimportant facts, and it is, of course, proper to refuse instructions which do this. Charging the Jury, 101. Instructions which suggest improper inferences are faulty. Proffatt Jury Trial, section 336; *Little Miami R. R. Co.* v. *Wetmore,* 19 Ohio St. 110; S. C., 2 Am. R. 373. Instructions which are more likely to mislead than to enlighten the jury should be refused. In *Sumner* v. *State,* 5 Blackf. 579 (36 Am. Dec. 561), the instructions refused were less obscure than the one under examination, and the court held that they were rightly refused, saying: "It is a sufficient objection to them, that they might convey to the mind of an unprofessional man of ordinary capacity, an incorrect view of the law applicable to the cause." In *Farrish* v. *State,* 63 Ala. 164, the court said: "In laying down a rule for the government of a jury, accuracy, clearness, and precision should be studied and sought after. It is never a reversi-

ble error to refuse a charge, the tendency of which, unexplained, is to mislead, or which, considered in connection with the evidence, requires explanation of one or more of its propositions to render it a safe and certain guide for the jury." To a like effect is the decision in *Baxter* v. *People*, 3 Gilm. 368, where it was said: "When instructions are so drawn, either from carelessness or design, that they will be more likely to mislead than instruct the jury, although after a careful study and investigation, we may be able to extract a correct principle of law from them, it becomes the undoubted duty of the court to refuse such instructions. * * * Instructions ought not to be given unless they may be fairly understood and easily comprehended by the jury." In *Clough* v. *State*, 7 Neb. 320, the instruction asked and refused was as follows: "If the evidence fails to show any apparent motive on the part of the accused to commit the crime charged, it ought to operate *strongly* as a circumstance in favor of the accused." The court held that it was properly refused, saying: "It would not have been proper for the court to have charged the jury as matter of law what effect the failure to show a motive to commit the crime should have. The court had no right to say whether it should operate 'strongly' or otherwise."

It is proper for the court to direct the minds of the jury to the facts of the case, but it is not proper for it to annex weight and value to them; that is the exclusive province of the jury. *Garfield* v. *State*, 74 Ind. 60.

To have given the instruction in the terms in which it is couched would have been to direct the jury that the fact that the homicide was openly committed was one of importance, equal to that of the absence of motive, and this would have been erroneous. More than this, absence of motive and the manner of slaying are grouped with evidence of insanity, thus asserting that the latter fact is entitled to consideration, and important consideration, upon the question of mental capacity. Putting these facts together as the instruction does would

have given the jury an erroneous view of the law. At all events, it would have given undue prominence, and in an improper connection, to an unimportant fact, and for this latter reason, if for no other, the trial court was justified in refusing the instruction. Instructions to Juries, 16.

Instructions must be not only correct as abstract statements of law, but correct, also, in their applicability to the evidence in the particular case. The evidence of the prosecution tended to show, and with convincing force, that the killing was the result of a long and deeply settled purpose, and one likely to be openly and boldly executed. It was not a case in which the slayer might be expected to conceal his crime or cover his conduct with the mantle of secrecy. The conduct and character of the accused were such as to create the presumption that he would, if sane, have done what he did publicly and not secretly. The manner of the slaying was, in this particular case, strictly consistent with sanity, for it would have been strange if such a man as the evidence shows the appellant to be had not slain his victim openly. It would have been error to instruct the jury in such a case as the evidence before us makes, that the manner in which the homicide was committed tended to prove insanity. The manner in which the crime of the accused was committed is, as the evidence shows, consistent with sanity, and not indicative of insanity, and the court could not justly have declared otherwise.

It is not the duty of the court to pronounce upon minor and subsidiary facts, which depend for their weight and value upon other facts. All such facts should be submitted to the jury without any expressed opinion as to their weight, leaving it to the jury to give them that consideration which the jurors may deem them entitled to receive when considered in connection with the whole evidence.

It is necessary that every fact which constitutes an essential ingredient of a crime charged against an accused should be proved beyond a reasonable doubt, but it is not necessary that

incidental or subsidiary facts should be proved by such a degree of evidence in order to entitle them to the consideration of the jury. *Wade* v. *State,* 71 Ind. 535.

Evidence is not to be considered in fragmentary parts and as though each fact or circumstance stood apart from the others, but the entire evidence is to be considered and the weight of testimony to be determined from the whole body of the evidence. A circumstance considered apart from the other evidence may be weak, if not improbable, but when viewed in connection with surrounding facts and circumstances may be so well supported as to remove all doubt as to its existence as detailed by the witness. Acts considered apart from all other evidence may appear innocent, but when considered with other evidence may import guilt. The seventeenth and eighteenth instructions asked fall before this rule.

The appellant asked the court to instruct the jury as follows: "Any person is of unsound mind who is an idiot, *non compos mentis,* a lunatic, or a monomaniac, or a distracted person." We do not think it was error to refuse to so instruct. It is true that the instruction is a copy of the statutory definition of insanity (R. S. 1881, section 2544), but we do not believe the definition one which ought to be given in a criminal prosecution, nor do we believe the Legislature meant that it should be used in such cases. The words used in the definition are general, and the signification of some of them vague and indefinite, and to give the definition to the jury could serve no useful purpose, since it would tend only to produce confusion. The term "distracted person" would convey to the jury an erroneous idea of the law, for in criminal jurisprudence distracted persons are not necessarily insane. At all events, no error was committed in refusing this instruction, for the reason that the court had, in other instructions, fully and correctly defined mental unsoundness, and had informed the jury what degree was essential in order to entitle the appellant to an acquittal.

The value of the testimony of expert witnesses, as, indeed,

of all witnesses, depends in a great degree upon their knowledge and integrity, and in so far as the instruction asked by the appellant asserted this well known truth, it was correct, but we do not think any case should be reversed because of the failure of the court to embody in an instruction a familiar truth, and one which all persons of ordinary intelligence are presumed to know. It would do little credit to jurors to presume that they did not know that two great requisites of a witness's credibility are knowledge and integrity, and the refusal to charge them upon such a matter can not be more than a harmless error, if, indeed, it can justly be held error at all. But the instruction was too narrow; it left out many other things which are proper for consideration, namely, interest, behavior on the witness stand, and other like matters which are always to be considered in determining the weight to be assigned to the testimony of a witness. The court is not bound to give an instruction which does not fully cover the particular point upon which it assumes to state the law.

The court ought not to give any instruction which will indicate to the jury that they are to prefer the testimony of expert witnesses to those who are non-experts, but who speak as to facts passing under their own observation and who base their opinions on these facts. The question as to which class of witnesses is entitled to the greater weight is for the jury, and not for the court, although the current of modern authorities is setting strongly against what is called expert evidence. Whart. Cr. Ev., section 420, auth. n.

Much labor has been bestowed upon this case by appellant's counsel, and we have given their able and elaborate argument careful consideration, but have found no reason which would justify us in reversing the judgment.

Judgment affirmed.

Filed April 17, 1883.

### On Petition for a Rehearing.

Elliott, C. J.—It is now more than fourteen months since

the original opinion in this case was filed, but it is only a short time since the brief on the petition for a rehearing was placed on file. The brief has been prepared with care, is an able and elaborate one, and contains a philosophical and thoughtful discussion of the questions involved. Influenced by the earnestness of counsel, we have again given the case full and careful consideration.

The principal position taken by counsel is that hypothetical questions asked an expert witness must embody all of the facts of which there is any evidence. It is assumed, as the chief support of this argument, that the analogue of such questions is found in the instructions of the court to the jury. It is not difficult to perceive that this assumption can not be made good either practically or theoretically.

The argument from analogy is forcible only when the resemblance is close; if there are marked points of difference between the conclusion deduced and the examples taken as leading by analogy to it, the argument fails. The resemblance between the analogue assumed as a just one by counsel, and the real case, fades away upon close inspection. There is one point of difference so plain and so material that no valid train of analogical reason can be pursued, and that point of difference is the situation of court and counsel. The court sits as an impartial arbiter of the law, charged with the duty of presenting the case for both parties; while counsel are charged with the duty of maintaining the theory which in their judgment is the true one. From the judge a different statement of facts, made in a different form and for a different purpose, is required from that which is expected or required of counsel. Counsel assume the facts which they think the evidence tends to prove, and the jury decide whether the facts assumed by counsel are established by the evidence.

If we should accept as true the assumption of counsel, that the resemblance between the instructions of the court and the questions of counsel is perfect, still, the conclusion which

appellant's counsel deduce is not a just one, because the court is not bound to rehearse all of the evidence in its instructions.

The law is a practical science and is intended to furnish rules which will enable the jury to ascertain the ultimate and ruling facts and arrive at a just result, and no rule can be recognized which is impracticable in operation. The rule stated by counsel is impracticable; it is simply impossible to carry it into force. Among the reasons which support this conclusion are these: If the court were required to determine whether the hypothetical question correctly stated all the facts, it would be compelled to usurp the functions of the jury. If the court were required to determine whether all the facts were stated, it would be compelled to wrest from the jury the right to determine the credibility of witnesses. If the hypothetical question were required to embrace all the facts, then there would be an end to all certainty in trials, for confusion and endless wrangling must inevitably flow from such a rule.

There is no injustice in the rule that counsel may assume such facts as he deems proved, for the opposing counsel can, on cross-examination, add to the question all such additional facts as he deems proved, or take from it all such facts as he thinks have not been proved, or that have been disproved. By this course the case can, without uncertainty or confusion, be placed fully before the jury.

The adjudged cases and the text-writers are overwhelmingly against the position taken by appellant's counsel. Since the former opinion was filed, we have followed the earlier cases cited in the former opinion. *Elliott* v. *Russell*, 92 Ind. 526. The question is not an open one in this State. The cases cited in the opinion heretofore filed from other courts show that the entire current of judicial opinion is in harmony with our decisions, and since it was filed two works on expert evidence have been given to the profession which declare the same doctrine and cite many cases. In one of these books it is said: " It is the privilege of the counsel in such cases to as-

sume, within the limits of the evidence, any state of facts which he claims the evidence justifies, and have the opinion of experts upon the facts thus assumed." Lawson Expert and Opinion Ev. 153. In the other work it is said, in speaking of a hypothetical question: "If framed on the assumption of certain facts, counsel may assume the facts in accordance with his theory of them, it not being essential that he should state the facts as they actually exist." Rogers Expert Testimony, 39. In addition to the authorities cited by these authors may be cited the recent case of *Stearns* v. *Field*, 90 N. Y. 640, wherein it was said: "It is well settled that when the testimony of experts is proper, counsel may assume the existence of any state of facts which the evidence fairly tends to justify." At another place in the same opinion it was said: "A striking illustration of the extent to which the rule is carried is found in *Harnett* v. *Garvey*, 66 N. Y. 641, where it is held that an error in the assumption does not make the interrogatory objectionable, if it is within the possible or probable range of the evidence." Again, it was said: "Such a question is not improper, because it includes only a part of the facts in evidence. *Mercer* v. *Vose*, 67 N. Y. 56." These authorities, to which many might be added and against which none are arrayed (except the solitary case commented on in the former opinion, which has long since been denied by this and all other courts), fully sustain our ruling that a hypothetical question may assume such facts as the examining counsel deem proved, if they are within the range of the evidence, and that such a question is not improper because it states less or states more than opposing counsel deem the evidence to establish.

The cases of *Erickson* v. *Smith*, 2 Abbott App. Cases, 64, and *Seymour* v. *Fellows*, 77 N. Y. 178, are not at all in point. *Guiterman* v. *Liverpool, etc., Co.*, 83 N. Y. 358, and *People* v. *Lake*, 12 N. Y. 358, decide that it is not proper for a physician who has heard part of the testimony to give his opinion on it; but they also decide that he should give his opinion as to what the facts, proved or claimed to be proved, indicate

as to the mental condition of the party, and this is in harmony with our ruling. In *Rush* v. *Megee*, 36 Ind. 69, many cases condemning expert evidence are cited, but we find no point decided that lends counsel any assistance; on the contrary it is strongly against them. We can not take time to comment on all of the cases cited by counsel, and we dismiss them with the statement that, with the one exception already referred to, they do not sustain their contention.

The decision in *Sage* v. *State*, 91 Ind. 141, is that where there is mental unsoundness the defendant is entitled to an acquittal, and that, under our statute, mental unsoundness does not merely mitigate the offence but excuses it. That decision does not profess to define mental unsoundness; the question of what constitutes mental unsoundness was not in the case. *Eggers* v. *Eggers*, 57 Ind. 461, does not profess to state what constitutes insanity, but simply decides that no matter what form the derangement assumes, it is mental unsoundness; the question was as to the form of the mental disease, not as to what constitutes disease of the mind sufficient to absolve from responsibility. The rule as to what constitutes mental unsoundness in civil cases is stated in *Somers* v. *Pumphrey*, 24 Ind. 231. As applicable to criminal cases, the rule is thus stated in an instruction fully approved in *Sawyer* v. *State*, 35 Ind. 80: "It is not every slight aberration of the mind, not every case of slight mental derangement, that will excuse a person for the commission of an act in violation of law." The rule heretofore stated that where there is mental capacity sufficient to fully comprehend the nature and consequences of the act, and unimpaired will power strong enough to master an impulse to commit crime, there is criminal responsibility, is sustained by the case just named, and by the following cases, which we add to the authorities heretofore cited: *Freeman* v. *People*, 4 Denio, 9 (47 Am. Dec. 216); *Bovard* v. *State*, 30 Miss. 600; *State* v. *Erb*, 74 Mo. 199; *De-Jarnette* v. *Com.*, 75 Va. 867; *Flanagan* v. *People*, 52 N. Y. 467; S. C., 11 Am. R. 731; *Walker* v. *People*, 26 Hun, 67; S.

Goodwin *v.* The State.

C., 88 N. Y. 81; *State* v. *Mewherter*, 46 Iowa, 88; *Com.* v. *Rogers*, 7 Met. 500. In a recent work entitled Insanity as a Defence to Crime, many cases will be found to the same effect on pages 231 to 270 inclusive. An examination of the cases will prove that we have stated the law as favorably to the accused as it can be asked; indeed, the statement is more favorable than the weight of authority warrants.

We are satisfied that our ruling as to the effect and force of the record of the commission which directed the appellant to be sent to the hospital for the insane was right. The only doubt we have is whether such evidence should be admitted at all. The case cited holding such evidence inadmissible is in full harmony with the reasoning in the recent case of *Breedlove* v. *Bundy, ante,* p. 319. The statutory examination held before the justices and a physician is not an inquisition of lunacy, and the decision of the examiners has none of the qualities of a judgment. The examination is simply a proceeding for the purpose of determining a single question, and that is, whether the person under examination is entitled to admission into the hospital. The decision of the examining commission does not put the person brought before it under guardianship; it requires an essentially different proceeding to do that.

It may be true that when insanity is proved the burden is shifted, but it is not true, even upon the concession that the record of the examining commission is evidence, that it proves insanity in a criminal prosecution, and for this reason, if for no other, the quotation from Ordonaux is not in point.

We are not willing to sanction the doctrine that "a perversion of the affections" constitutes such mental unsoundness as will absolve one from responsibility for crime. We have already cited authorities to prove that such a moral state belongs to a phase of so called moral insanity which the law refuses to recognize as mental incapacity. If it were insanity, then every lover who in a fit of jealousy slays his

mistress, or every man who is moved to kill another by an impulse arising from fancied wrongs, must go acquit, and this surely is a result not countenanced by principle or authority. To the authorities already cited we now add *State* v. *Brandon*, 8 Jones Law, 463; *State* v. *Stickley*, 41 Iowa, 232; *Choice* v. *State*, 31 Ga. 424; *Spann* v. *State*, 47 Ga. 549; *People* v. *Finley*, 38 Mich. 482; *Boswell* v. *State*, 63 Ala. 307; *Regina* v. *Haynes*, 1 F. & F. 666; *Regina* v. *Burton*, 3 F. & F. 772. Our court has recognized the doctrine that there may be a disease of the will power constituting insanity, but no case that we have found carries the so called doctrine of moral insanity any farther.

The tenth charge asked by the appellant does not confine the inquiry to the question whether the accused was laboring under a delusion, but also affirms that if either delusion or "perversion of the affections" impelled him to kill his brother, he was entitled to an acquittal. There can be no mistaking the meaning of this instruction, because the language is, "if, upon the whole evidence, you have a reasonable doubt whether such causes induced the killing of the deceased, you should acquit the defendant." We have heretofore cited authorities to the effect that it is not error to refuse an instruction, unless the party is entitled to have it given in the terms prayed, and we think it clear that the appellant was not entitled to have the instruction given as it was written. Even if that part of it which speaks of "a perversion of the affections" had not been included in its terms, it is extremely doubtful whether it would have stated the law correctly, for it is not every delusion that relieves from criminal responsibility. *Addington* v. *Wilson,* 5 Ind. 137; *Johnson* v. *Johnson,* 10 Ind. 387; *State* v. *Mewherter, supra; State* v. *Felter,* 25 Iowa, 67; *Com.* v. *Rogers, supra; State* v. *Gut,* 13 Minn. 341; *Guiteau's Case,* 10 Fed. R. 161, Dr. Wharton's note.

A man can not be absolved from responsibility for crime, no matter how furious his passion, for passion, in legal contemplation, never constitutes insanity. *Guetig* v. *State,* 66.

Goodwin v. The State.

Ind. 94; S. C., 32 Am. R. 99; *Lynch* v. *Com.*, 77 Pa. St. 205; Lawson Insanity as Defence to Crime, 146.

The court told the jury, and properly, that voluntary drunkenness is no excuse for crime, and told them also that "where *delirum tremens* is set up as a defence, the delirium must exist at the time of the homicide," and this, as an abstract proposition, was undoubtedly correct, and there was, as we think, evidence making it relevant.

We are clear that we were right in holding that the law imposes upon every man the duty of mastering his passions and his appetites, and to the authorities heretofore cited we subjoin this extract from a strongly reasoned opinion, where, in speaking of what is sometimes called *dipsomania*, it was said: "Upon this proposition, however, I plant myself immovably; and from it, nothing can dislodge me but an act of the Legislature, namely: that neither moral nor legal responsibility can be avoided in this way. This is a new principle sought to be engrafted upon criminal jurisprudence. It is neither more nor less than this, that a want of will and conscience to do right, will constitute an excuse for the commission of crime; and that, too, where this deficiency in will and conscience is the result of a long and persevering course of wrongdoing. If this doctrine be true—I speak it with all seriousness —the devil is the most irresponsible being in the universe. * * * * The fact is, responsibility depends upon the possession of will—not the power over it." *Choice* v. *State*, 31 Ga. 424, 473; Lawson Insanity as Defence to Crime, 549. If, we conclude, there is an undiseased will power, the man who possesses it must exercise it, and can not plead his failure to use what he possesses in common with other persons as an excuse for taking human life. *Flanagan* v. *People, supra.*

We have again read the sixteenth instruction and studied counsel's argument, which is but a repetition of what was said on the former hearing. We are content to take as authoritative the cases cited, and we prefer the statements of an author so justly esteemed as is Seymour D. Thompson to the unsus-

tained assertions of counsel, and this, too, notwithstanding counsel's criticism.

The instruction approved in *Guetig* v. *State, supra*, is good law, and is in harmony with the authorities. Lawson Insanity as Defence to Crime, 455.

It has been several times decided within twelve months, that the weight of testimony, whether of experts or non-experts, is for the jury, and that it is error for the court to assume to instruct which class is entitled to the greater weight. *Fulwider* v. *Ingels*, 87 Ind. 414; *Vanvalkenberg* v. *Vanvalkenberg*, 90 Ind. 433; *Elliott* v. *Russell, supra;* Lawson Expert and Opinion Ev. 154, 240; Rogers Expert Testimony, 58, 60, 61.

The trial court did instruct the jury very plainly that if the appellant was insane, no matter from what cause, he was entitled to an acquittal. Those instructions gave him the benefit of all causes of insanity, and necessarily included insanity from the use of intoxicating liquors, so that he got the benefit of all that is now claimed for him upon the score of diseased mental faculties arising from the use of intoxicating drinks. The instructions fall within the principle laid down in *Harvey* v. *State*, 40 Ind. 516, and *Sawyer* v. *State*, 35 Ind. 80. In our former opinion we referred to authorities holding that voluntary drunkenness is no excuse for crime, and that it is only insanity that renders a man mentally incapable of committing crime, and to the authorities heretofore cited we add : *State* v. *Gut, supra; Kriel* v. *Com.,* 5 Bush, 362; *People* v. *Garbutt*, 17 Mich. 8; *McKenzie* v. *State*, 26 Ark. 334; *Bennett* v. *State*, 2 Mart. & Yerg. 133; *Boswell's Case*, 20 Grat. 860; *State* v. *Cross*, 27 Mo. 332; *State* v. *Tatro*, 50 Vt. 483; *State* v. *Welch*, 21 Minn. 22; *vide* auth. cited 4 Crim. Law Mag. 584 *n.*

On consultation upon the petition for a rehearing some difference of opinion was developed as to the correctness of the statement in the original opinion that it was not, considered as an abstract question, error to refuse the instruction embodying the statutory definition of mental unsoundness, and

we have concluded to so far modify the original opinion as to leave that point undecided, and to place our decision, so far as this question is involved, solely on the ground that, even if it were proper to give such an instruction, no substantial error was committed in refusing it in the present instance, because the whole ground of mental unsoundness is covered by the instructions of the court. Our statute provides that "the Supreme Court shall not regard technical errors or defects or exceptions, * * which did not, in the opinion of the Supreme Court, prejudice the substantial rights of the defendant." R. S. 1881, sec. 1891. Where the whole doctrine upon a subject is stated in the instructions of the court, no substantial injury is done the defendant by refusing to give a definition in the language of the statute. Aside from this consideration, the rule, as stated in the original opinion, has always been that where the instruction asked is substantially embodied in those given by the court, there is no error in the refusal.

We can not reverse upon the evidence, for while there is evidence opposing the conclusion reached by the jury, there is much strongly and fully supporting, and long settled rules require us to sustain the verdict in such cases.

Petition overruled.

Filed June 28, 1884.