No. 14,600.

WAGNER v. THE STATE.

CRIMINAL LAW.— *Witness.*—*Contradictory Statements.*—*Impeachment.*—A witness can be impeached by statements made out of court only when such statements are contradictory of his testimony.

SAME.—*Reconcilable Statements.*—A statement out of court that at the time he shot the witness the accused " was crazed from the use of liquor, and from the trouble on his mind," is not necessarily contradictory of a statement in court that the accused was sober when he did the shooting.

SAME.—*Intoxication.*—*Insanity.*—*Delirium Tremens.*—*Instructions to Jury.*— Voluntary intoxication existing at the time a crime is committed is not available as an excuse or defence in a prosecution by the State. For instructions to the jury upon the subject of insanity and delirium tremens caused by the use of intoxicating liquor, see opinion.

SAME.—*Medical Experts.*—*Opinions.*—*Instruction.*—*Province of Jury.*—An instruction that the opinions of medical experts are to be considered by the jury in connection with all the other evidence in the case ; that they are not bound to act upon them to the exclusion of other testimony; and that, giving such opinions their proper weight, they are to determine for themselves, from the whole evidence, whether or not the defendant was of sound mind, is not erroneous as invading the province of the jury or discrediting the testimony of the experts.

From the Marion Criminal Court.

*J. S. Duncan, C. W. Smith* and *J. R. Wilson,* for appellant.

*L. T. Michener,* Attorney General, and *J. H. Gillett,* for the State.

ZOLLARS, J.—Appellant was convicted and sentenced to the State's prison for a term of five years, upon a charge of assault and battery with intent to kill. It is insisted on his part that the judgment should be reversed because of alleged errors of the court below in excluding certain evidence, and in giving certain instructions.

Insanity was the defence, and the only defence, relied upon by appellant.

Wagner v. The State.

The evidence shows, without any contradiction, that some time prior to the assault, appellant had a wife and child, a daughter, with whom he lived, a short distance from the house in which lived a lewd woman, who went by the name of Frankie Howe ; that he neglected his wife and child, and spent most of his time, and especially his nights, in the company and in the embraces of the Howe woman ; that the illicit intercourse continued until he wholly abandoned his wife and child, and, urged forward by the evil spirit which is sure to possess and control any one who neglects and abandons wife, children and home for the haunts of the vile and wicked, he finally proposed to get a divorce from his wife and marry the Howe woman ; that, enraged by jealousy and her refusal to marry him, he called at the house where she lived and attempted to kill her ; that one ball discharged from his revolver passed through her body ; that after she fell upon the floor another ball discharged from his revolver struck her in the lower limb, and passing upward broke the bone above the knee ; that another ball inflicted a flesh wound upon her abdomen, and that the last ball in the revolver was discharged and missed her. She did not die from the effects of the wounds, but is a cripple for life.

The theory of the defence was, and is, that appellant was insane from the excessive use of intoxicating liquors.

In her examination in chief, the woman, Frankie Howe, stated that appellant was sober when he shot her.

For the purpose of laying the foundation for an impeachment, counsel for appellant asked her this question, upon cross-examination : "When he visited you in company with Mr. Herod, I will ask you if you did not say to Mr. Herod that it was not John Wagner who shot you; that it was a drunken, crazy man?" Having answered that she did not think she had made such a statement, the same counsel propounded this question, "and that he would not have shot you if he had not been crazy?" Having answered again that she did not recollect of having stated anything of the

kind, counsel propounded this further question: "You did not say that in the presence of Mr. Herod?" To that question she answered, "I don't think I did."

Mr. Herod was called as a witness by appellant, and, having testified that on one occasion subsequent to the shooting, and in company with appellant, he had visited her as her attorney, appellant's attorney asked him this question:

"I will ask you to state if at the time you called, as you have described, Frankie Howe said to you, in substance, that it was not John Wagner who shot her"— The witness, interrupting, said: "I can say now, she did not say it to me; it was said in my hearing."

Counsel, continuing, finished the question as follows: "That it was a crazy man who was crazed from the use of liquor and from trouble that he had on his mind at the time."

Mr. Herod closed his answer by saying that all he had heard her say was by reason of his being present as her attorney "relating to this matter."

Insisting that he could make no further statement without violating his obligation as an attorney to his client, he declined to answer. The court refused to require a further answer. Appellant excepted, assigned the refusal of the court as a cause for a new-trial, and here insists that the court erred.

The statement by Mr. Herod that "she did not say it to me; it was said in my hearing," amounted to an answer that Frankie Howe had stated that it was not John Wagner who shot her.

That statement, while a partial answer to the question propounded, was not, of itself, important, because there is no claim that appellant did not shoot her. It could only be important, if at all, in connection with the balance of the statement which, by the questions to her and to Mr. Herod, it was assumed she made.

What appellant was seeking to do was to impeach her by showing that she had made statements out of court contra-

dictory of her statement upon the witness stand that he was sober at the time he shot her. That statement, it will be observed, did not amount to a statement that he was not an habitual drunkard, nor that he was not insane as the result of the excessive use of intoxicating liquors. It was simply that he was sober.

Under some of the authorities, it may be a question as to whether the simple fact of his being intoxicated or sober at the time he did the shooting was in any way material.

We do not think it necessary to decide that question here, and, therefore, we leave it where it has been left by our cases. Assuming, for the purposes of this opinion, that it was material, the rule is well settled that a witness can be impeached by statements made out of court only when those statements are contradictory of his statements upon the witness-stand. If the two statements are consistent and reconcilable with each other, the statement made out of court will not be received to impeach the witness. 1 Wharton Evidence, section 558.

In this case, the statement which it is claimed Frankie Howe made in the hearing of her attorney, Mr. Herod, is not necessarily contradictory of her statement in court. Appellant might have been insane from the habitual use of intoxicating liquors, and yet have been sober when he did the shooting.

As expressed in the question to Mr. Herod, appellant, at the time of the shooting, might have been a crazy man, who was crazed from the use of liquor, and from the trouble he had on his mind at the time, and yet have been sober at that time, as stated by Frankie Howe in court.

There is another objection, urged by counsel for the State, to the impeaching question propounded to Mr. Herod, which is not without weight, and that is, that by that question appellant sought to prove what amounted to an expression of a mere opinion by Frankie Howe, as to the mental condition of appellant, to contradict her statement in court that he was

sober when he did the shooting. See *Rucker* v. *Beaty*, 3 Ind. 70; 1 Wharton Evidence, section 551. See, also, *Warner* v. *State*, 114 Ind. 137.

Counsel for appellant contend that Mr. Herod should not have been excused from answering, by reason of having been the attorney for Frankie Howe, inasmuch as appellant was present, and was really the person to whom she addressed her conversation. Counsel for the State argue to the contrary.

The conclusions already stated, and our conclusion upon the whole case, render it unnecessary for us to decide the point in controversy last above stated. Whatever view might be taken of that question, we are clear that it should not be regarded as of sufficient consequence to require a reversal of the judgment.

Appellant's sentence is five years in the State's prison. Under the statute it might have been fourteen years. Keeping in view the length of the sentence, and all of the facts in the case as shown by the evidence, we regard this as a case in which our statute should be applied, which provides that "In the consideration of the questions which are presented upon an appeal (in criminal cases), the Supreme Court shall disregard technical errors or defects or exceptions to any decision or action of the court below, which did not, in the opinion of the Supreme Court, prejudice the substantial rights of the defendant." R. S. 1881, section 1891.

The evidence shows not only depravity on the part of appellant, and a determined effort by him to kill the woman with whom he had maintained the unlawful and lewd relation, but also, that at the time he attempted to kill her he had no such mental infirmity as ought to exonerate him from the consequences of his acts. His moral sense was blunted, as his conduct shows, but that was more the result of vicious habits than of mental condition.

Appellant offered to read in evidence a letter which he had received from Frankie Howe, for the purpose, as stated by counsel in argument, of showing the intimate relations

which had existed between her and appellant, and thus show-ing the improbability of an attempt by him to kill her, un-less he was insane.

The exclusion of the letter by the court involved no error for which the judgment should be reversed.

The undisputed testimony of Frankie Howe, upon that branch of the case, showed very fully the relations which had existed between her and appellant prior to the shooting.

The eleventh instruction given by the court is as follows: " Mental incapacity produced by voluntary intoxication, ex-isting only temporarily, but at the time of the commission of the offence, is no excuse for crime, nor a defence to a prosecution therefor. But where the habit of intoxication, though voluntary, has been long continued, and has pro-duced disease which has perverted or destroyed the mental faculties of the accused so that he was incapable at the time of the commission of the alleged crime, on account of the disease, of acting from motive, or of distinguishing right from wrong, in short, insane, he will not be held accounta-ble for the act charged as a crime committed while in such condition."

We give attention to so much of the instruction as is ob-jected to by appellant, and limit our observations to the objections urged. His counsel contend that, by the first portion of the charge, the court instructed the jury that if a person's mind is rendered unsound by voluntary intoxica-tion, such unsoundness will not constitute an excuse, or a defence to a charge of crime, unless it was caused by intoxi-cation long continued. We think that counsel put a strained and incorrect construction upon the charge. The instruc-tion is not couched in the most specific and appropriate lan-guage, but, evidently, what the court intended, and what the jury doubtless understood the instruction to mean, was, that voluntary intoxication existing at the time a crime is com-mitted will not be available as an excuse or defence in a prosecution by the State. But if it should be conceded that

the construction contended for by counsel is the correct one, and that that portion of the instruction was erroneous, we are unable to discover in what way it could have injured appellant. The proof is conclusive that at the time he did the shooting he was not in such a condition of intoxication as that his knowledge of right and wrong was affected thereby. Indeed, the proof is quite conclusive that he was sober.

The evidence shows that for quite a long time he had been an habitual drinker of intoxicating liquors, and in the habit of becoming intoxicated; and there is testimony tending to show that the intoxication thus continued had, to some extent, affected his mind, although upon that point the testimony is conflicting.

The latter part of the instruction was applicable to the case as made by the testimony adduced by appellant, and of that portion no complaint is made.

The thirteenth instruction given by the court, to which appellant objected, and still objects, was as follows:

"Insanity of a permanent nature, when once shown to exist, is presumed to continue until the contrary appears; but where delirium tremens is set up as a defence, the delirium must exist at the time the act was committed, as there is no presumption of its existence from antecedent fits from which the party has recovered, for this is a mere transient derangement of the mind, and there is no presumption of its recurrence or continuance."

With the exception of the last two sentences, the foregoing is a literal copy of an instruction approved in the case of *Goodwin* v. *State*, 96 Ind. 550 (560).

Appellant's counsel contend that it was not correct as applied to this case, for the reason that one of the physicians called by the defence testified that frequent attacks of delirium tremens would have the effect of weakening the mind. That testimony did not, in our judgment, render the instruction inapplicable, nor so erroneous as to require a reversal of the judgment.

If the testimony was such as to convince the jury that appellant's mind had been in any way affected and weakened by attacks of delirium tremens, they were instructed, by the former part of the charge, that the weakened condition, once shown, would be presumed to continue. The latter part of the instruction had reference alone to fits of delirium tremens, and not to a weakened condition of the mind caused by a recurrence of such fits.

It is claimed by counsel for appellant that by the fourteenth instruction the court invaded the province of the jury, and threw discredit upon the testimony of the medical experts. The instruction was as follows:

"The opinions of medical experts are to be considered by you, in connection with all the other evidence in the cause; but you are not bound to act upon them to the entire exclusion of other testimony. Taking into consideration these opinions, and giving them just and proper weight, you are to determine for yourselves, from the whole evidence, whether the defendant was, or was not, of sound mind, giving him the benefit of a reasonable doubt, if any such arises from the evidence."

We are unable to see in what respect that instruction invaded the province of the jury, or threw discredit upon the testimony of the expert witnesses.

It seems to us that if the instruction was faulty at all, the complaint should come from the State. Such a fault, if any, could by no possibility affect appellant injuriously.

It is not necessary, however, to extend the discussion of that instruction, as it seems to have been copied from an instruction also approved in the case of *Goodwin* v. *State, supra* (561).

We have thus followed the arguments of counsel with care, and are convinced that the record presents no error for which the judgment should be reversed.

Judgment affirmed.

Filed Nov. 26, 1888.